Nos. 24-3133, 24-3206, 24-3252

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

OHIO TELECOM ASSOCIATION; TEXAS ASSOCIATION OF BUSINESS; CTIA – THE WIRELESS ASSOCIATION; NCTA – THE INTERNET & TELEVISION ASSOCIATION; USTELECOM – THE BROADBAND ASSOCIATION,

*Petitioners*,

HAMILTON RELAY, INC.,

*Intervenor*.

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES OF AMERICA,

*Respondents*.

On Petitions For Review Of An Order Of The
Federal Communications Commission, Agency No. 23-111

## BRIEF OF TECHFREEDOM AS *AMICUS CURIAE* IN SUPPORT OF PETITIONERS

John Anderson Jung
  *Counsel of Record*
TECHFREEDOM
1500 K. Street NW, Floor 2
Washington, D.C. 20005
ajung@techfreedom.org

*Counsel for* Amicus Curiae

# TABLE OF CONTENTS

**Page**

INTEREST OF *AMICUS CURIAE*......................................................... 1

INTRODUCTION & SUMMARY OF ARGUMENT ................................ 2

I. The FCC Forges Ahead with the Data Breach Reporting Requirements Rule Despite a Clear Directive from Congress to Abandon It. ................................................................................ 5

II. The FTC's Regulatory Approach to Children's Advertising Is Exemplary of Agency Restraint in Response to Congress Rejecting a Rule. ............................................................................ 8

CONCLUSION ....................................................................................... 11

CERTIFICATE OF COMPLIANCE ....................................................... 12

CERTIFICATE OF FILING AND SERVICE ......................................... 13

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204 (1988) .......................... 4

*City of Arlington v. Fed. Commc'ns Comm'n,* 569 U.S. 290 (2013) ............................................................................................................. 2

*Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553 (9th Cir. 2019) ........................................................................................ 6

*Ctr. for Biological Diversity v. Zinke*, 313 F. Supp. 3d 976 (D. Alaska 2018) ........................................................................................ 4

*Talk Am., Inc. v. Mich. Bell Tel. Co.*, 564 U.S. 50 (2011) ........................ 2

**Statutes and Regulations**

5 U.S.C. § 801(b)(1) .................................................................................... 5

5 U.S.C. § 801(b)(2) ............................................................................. 3, 5

Pub. L. No. 96-252, 94 Stat. 374 (1980) ............................................. 4, 10

Pub. L. No. 115-22, 131 Stat. 88 (2017) .................................................... 3

47 C.F.R. § 64.2002(f) (2016) ..................................................................... 6

47 C.F.R. § 64.2002(m) (2016) ................................................................... 6

47 C.F.R. § 64.2006(a) (2016) .................................................................... 6

47 C.F.R. § 64.2006(b)-(c) (2016) .............................................................. 6

47 C.F.R. § 64.2011(a) (2024) .................................................................... 6

47 C.F.R. § 64.2011(b) (2024) .................................................................... 6

47 C.F.R. § 64.2011(e)(2) (2024) ................................................................ 6

**Other Authorities**

43 Fed. Reg. 17,967 (Apr. 27, 1978) ........................................................... 9

46 Fed. Reg. 48,710 (Oct. 2, 1981) ............................................................. 9

89 Fed. Reg. 9968 (Feb. 12, 2024) .............................................................. 3

126 Cong. Rec. 2366 (1980) ........................................................................ 9

*Annual Report of the Federal Trade Commission* (1980) ........................ 10

Brief of TechFreedom, et al., *LabMD, Inc. v. FTC*, No.
    16-16270 (11th Cir., Jan. 3, 2017) ........................................................ 1

Corbin K. Barthold, *The Fraught Path to a Federal Privacy
    Law Businesses Can Live With*, WLF Legal Backgrounder
    (Mar. 11, 2021) ..................................................................................... 2

Dissenting Statement of Commissioner Carr (Dec. 13, 2023) .............. 7, 8

Dissenting Statement of Commissioner Simington
    (Dec. 13, 2023) ...................................................................................... 8

FTC, *Advertising to Kids and the FTC: A Regulatory
    Retrospective That Advises the Present* (2004) ................................ 9, 10

Earl W. Kintner, et al., *The Effect of the Federal Trade Commission Improvements Act of 1980 on the FTC's Rulemaking and Enforcement Authority*, 58 Wash. U. L. Rev. 847 (1980) ................................................................. 9, 10

Letter from Sen. Ted Cruz, et al., to Hon. Jessica Rosenworcel, Chair, FCC (Dec. 12, 2023), https://www.fcc.gov/ecfs/document/12121312026201/1. ....................... 7

*Protecting the Privacy of Customers of Broadband and Other Telecommunications Services*, Report and Order, 31 FCC Rcd 13911 (2016) ............................................................. 2, 3

TechFreedom, Comments on Petition for Rulemaking to Prohibit the Use on Children of Design Features that Maximize for Engagement (Jan. 18, 2023) .......................................... 1

TechFreedom, Comments on Protecting Kids from Stealth Advertising in Digital Media (Nov. 18, 2022) ....................................... 1

# INTEREST OF *AMICUS CURIAE*[1]

TechFreedom is a nonprofit, nonpartisan think tank dedicated to promoting technological progress that improves the human condition. It seeks to advance public policy that makes experimentation, entrepreneurship, and investment possible.

TechFreedom is committed to protecting data privacy. TechFreedom is equally committed to ensuring that the administrative state acts within the proper bounds of its authority. For many years, TechFreedom has been sharing expert advice with agencies, the courts, and the public on how to craft privacy rules that are effective *and* legal. *See*, *e.g.*, Brief of TechFreedom, et al., *LabMD, Inc. v. FTC*, No. 16-16270 (11th Cir., Jan. 3, 2017); TechFreedom, Comments on Petition for Rulemaking to Prohibit the Use on Children of Design Features that Maximize for Engagement (Jan. 18, 2023), https://bit.ly/45OqTtS; TechFreedom, Comments on Protecting Kids from Stealth Advertising in Digital Media (Nov. 18, 2022), https://bit.ly/4dZunke; Corbin K.

---

[1] No counsel for a party authored this brief in whole or in part, and no entity or person, aside from *amicus curiae*, or its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. *See* Fed. R. App. P. 29(a)(4)(E). All parties have consented to the filing of this brief.

Barthold, *The Fraught Path to a Federal Privacy Law Businesses Can Live With*, WLF Legal Backgrounder (Mar. 11, 2021), https://bit.ly/4dZSEXu.

This case encapsulates the *wrong* way for the administrative state to approach rulemaking. After being explicitly told by Congress *not* to issue a data breach notification rule, the Federal Communications Commission (FCC) has done exactly that. The FCC has "been rebuked in its attempts to expand [a] statute beyond its text," yet has "sought new means to the same ends." *See Talk Am., Inc. v. Mich. Bell Tel. Co.*, 564 U.S. 50, 69 (2011) (Scalia, J., concurring). The Court should send a clear message: "Agencies are creatures of Congress" that must listen closely to the people's representatives. *City of Arlington v. Fed. Commc'ns Comm'n,* 569 U.S. 290, 317 (2013).

### INTRODUCTION & SUMMARY OF ARGUMENT

In 2016, the FCC adopted the omnibus Broadband Privacy Order. *Protecting the Privacy of Customers of Broadband and Other Telecommunications Services*, Report and Order, 31 FCC Rcd 13911 (2016). The Order contained fifty-seven distinct rules governing how telecommunications carriers manage consumer data. *Id.* at 14080-14086

(Appendix A). The Order included the 2016 Data Breach Notification Rule, which required telecommunications carriers to maintain records and report data breaches directly to the FCC. *Id.* at 14085-86 (§ 64.2006).

In 2017, Congress used the Congressional Review Act (CRA) to pass a Joint Resolution "providing for congressional disapproval" of the Broadband Privacy Order and declaring that "such rule shall have no force or effect." Pub. L. No. 115-22, 131 Stat. 88 (2017). The CRA Joint Resolution prohibits the FCC from reissuing the rule "in substantially the same form" or issuing a "new rule that is substantially the same[.]" 5 U.S.C. § 801(b)(2). Congress commanded the FCC not to reissue the Broadband Privacy Order, including the 2016 Data Breach Notification Rule—or any rule that is substantially the same.

Despite the Joint Resolution, the FCC published the Data Breach Reporting Requirements Rule earlier this year. 89 Fed. Reg. 9968 (Feb. 12, 2024). This purportedly new rule is substantially the same— indeed, functionally identical—to the 2016 Data Breach Notification Rule. To justify reissuing substantially the same rule, the FCC tortures the text of the CRA, arguing that the law "does not prohibit the Commission from revising its breach notification rules in ways that are

-3-

similar to, or even the same as, some of the revisions that were adopted in the 2016 Privacy Order, unless the revisions adopted are the same, in substance, as the 2016 Privacy Order as a whole." *Id.* at 9993.

The FCC forges ahead with a data breach notification rule that is substantially the same as the rule Congress rejected in 2017. This defiance of Congress conflicts sharply with the subsidiary status of administrative agencies: "It is axiomatic that an administrative agency's power to promulgate legislative regulations is limited to the authority delegated by Congress." *Bowen v. Georgetown Univ. Hosp.*, 488 U.S. 204, 208 (1988). And Congress may modify an agency's rulemaking authority through procedures like the CRA, as it has done here, or via ordinary legislation. *See Ctr. for Biological Diversity v. Zinke*, 313 F. Supp. 3d 976, 989 (D. Alaska 2018) (citing *Food & Drug Admin. v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 125 (2000)).

In 1980, Congress passed the Federal Trade Commission Improvements Act, which prohibited the FTC from promulgating rules "substantially similar" to the agency's proposed rule banning television ads directed at children. Pub. L. No. 96-252, § 3(a), 94 Stat. 374, 374 (1980). The FTC obeyed: the agency has never sought to reissue the

-4-

rejected rule or one functionally similar. The FTC's restrained regulatory approach to children's advertising post-1980 reflects the appropriate agency response to Congress prohibiting substantially similar rules.

By defying the congressional Joint Resolution, the FCC takes the complete opposite approach. The plain meaning of the CRA, bolstered by the subsidiary status of administrative agencies in our democracy, forbids the issuance of the Data Breach Reporting Requirements Rule: which is, for all intents and purposes, a maskless reissuance of the 2016 Data Breach Notification Rule rejected by Congress.

## ARGUMENT

### I. The FCC Forges Ahead with the Data Breach Reporting Requirements Rule Despite a Clear Directive from Congress to Abandon It.

In 2017, Congress passed a CRA Joint Resolution nullifying the 2016 Broadband Privacy Order. 131 Stat. 88 (2017). The CRA states: "A rule shall not take effect (or continue), if the Congress enacts a joint resolution of disapproval[.]" 5 U.S.C. § 801(b)(1). "A rule that does not take effect (or does not continue) … may not be reissued in *substantially the same* form, and a new rule that is *substantially the same* as such a rule may not be issued" absent specific authorizing legislation. *Id.* §

801(b)(2). A CRA Joint Resolution deprives the disapproved rule of "any force or effect" and "validly amend[s]" the agency's statutory authority by prohibiting the issuance of rules that are substantially the same. *See Ctr. for Biological Diversity v. Bernhardt*, 946 F.3d 553, 562 (9th Cir. 2019).

The 2024 Data Breach Reporting Requirements Rule is substantially the same as and functionally identical to the 2016 Data Breach Notification Rule. Both rules vastly expand data breach reporting requirements to cover "personally identifiable information" (PII), *compare* 2016 Rule, 47 C.F.R. § 64.2002(f), *with* 2024 Rule, 47 C.F.R, and define PII the same way. *Compare* 2016 Rule, 47 C.F.R. § 64.2002(m), *with* 2024 Rule, ¶ 17 § 64.2011(e)(2). *See also* Pet. Brief at 44 (comparison chart). Both rules require telecommunications carriers to report data breaches to the FCC, in addition to the FBI and Secret Service. *Compare* 2016 Rule, 47 C.F.R. § 64.2006(b)-(c), *with* 2024 Rule, 47 C.F.R. § 64.2011(a). Both rules require carriers to issue notifications within 30 days after a breach. *Compare* 2016 Rule, 47 C.F.R. § 64.2006(a), *with* 2024 Rule, 47 C.F.R. § 64.2011(b).

Lawmakers have denounced reissuance of the data breach notification rule. Four Senators decried the FCC's effort "to resurrect" the rule as "clearly unlawful."

> The FCC's proposed rules in the Report and Order are clearly 'substantially similar' to the nullified 2016 rules. Specifically, the requirements in the Report and Order governing notification to the FCC, law enforcement, and consumers, as well as the recordkeeping requirements with respect to breaches and notifications, are substantially similar to the notification and recordkeeping requirements disapproved by Congress.

Letter from Sen. Ted Cruz, et al., to Hon. Jessica Rosenworcel, Chair, FCC (Dec. 12, 2023), https://bit.ly/3WXW3Qr.

Commissioner Carr dissented to the reissuance, noting that "the Commission makes no real attempt to explain how the data breach rule we adopt today is not the same or substantially similar to the one nullified by the House, the Senate, and the President in the 2017 CRA." Dissenting Statement of Commissioner Carr at 1 (Dec. 13, 2023), https://bit.ly/4bWoHG6. Commissioner Simington also dissented, and

both dissenting commissioners rejected the FCC's proposed reading of the CRA. *Id*; Dissenting Statement of Commissioner Simington at 1 (Dec. 13, 2023), https://bit.ly/4bPBxWI (warning that the FCC's "wooden reading" would make the CRA "a nullity").

The bottom line for both rules is the same: telecommunications carriers would be required to quickly report data breaches involving both "personally identifiable information" (PII) and "customer proprietary network information" (CPNI) directly to the FCC. Congress, however, rejected this rule—and any rules that are substantially the same. By forging ahead with the data breach notification rule despite clear congressional disapproval, the FCC defies the subsidiary status of administrative agencies beneath Congress.

## II. The FTC's Regulatory Approach to Children's Advertising Is Exemplary of Agency Restraint in Response to Congress Rejecting a Rule.

Congress enacted the CRA in 1996 to provide itself with a streamlined procedure for overturning agency rules. Before 1996, the U.S. Code contained only one reference to "substantially similar" rules: in the FTC Improvements Act of 1980, which ended the infamous and ill-fated "KidVid" rulemaking saga.

In 1978, the FTC initiated a rulemaking proceeding on Children's Advertising. 43 Fed. Reg. 17,967 (Apr. 27, 1978). The "KidVid" rule proposed to ban television advertisements promoting sugary foods to children. The rule was "widely perceived as a grossly overreaching proposal," eliciting criticism from industry, the public, and Congress. FTC, *Advertising to Kids and the FTC: A Regulatory Retrospective That Advises the Present* at 8 (2004) (*KidVid FTC Report*). "The children's advertising proceeding was toxic to the Commission as an institution" *Id.* at 7. Senator Carl Levin called the FTC an "unaccountable, unelected agency." 126 Cong. Rec. 2366 (1980). The FTC terminated the rulemaking in 1981. 46 Fed. Reg. 48,710 (Oct. 2, 1981). *See also KidVid FTC Report* at 8 ("Congress passed a law prohibiting the FTC from adopting any rule in the children's advertising rulemaking proceeding[.]").

Congress passed the FTC Improvements Act of 1980 "to curb the FTC's discretionary authority[.]" Earl W. Kintner, et al., *The Effect of the Federal Trade Commission Improvements Act of 1980 on the FTC's Rulemaking and Enforcement Authority*, 58 Wash. U. L. Rev. 847, 847 (1980). The FTC Improvements Act declares: "The Commission shall not

have any authority to promulgate any rule in the children's advertising proceeding…or in any *substantially similar* proceeding on the basis of a determination by the Commission that such advertising constitutes an unfair act or practice in or affecting commerce." Pub. L. No. 96-252, § 3(a), 94 Stat. 374, 374 (1980). In short, Congress forbade the FTC from pursuing rules substantially similar to "KidVid."

The FTC obeyed, "mov[ing] swiftly…to implement[] the Act." *Annual Report of the Federal Trade Commission* (1980) at 11. "Congressional criticism of the Commission" caused the agency to regulate "much more cautiously." Kintner, *supra* at 858. Critically, the FTC has never attempted to repromulgate or reissue a rule substantially similar to "KidVid." The rulemaking "is not a journey that anyone at the Commission cares to repeat." *KidVid FTC Report* at 23.

In response to Congress rejecting the "KidVid" rule, the FTC terminated the rulemaking and, twenty years later, reflected on lessons learned in its 2004 report on Advertising to Kids. The FTC's regulatory restraint post-1980 illustrates how agencies should respond when Congress rejects a rule.

The FTC Improvements Act of 1980 prohibits *substantially similar* rules; the CRA prohibits rules that are *substantially the same*. Both congressional directives are clear, but the agency responses are antithetical. Whereas the FTC abandoned the "KidVid" rule altogether, the FCC forges ahead with the rejected data breach notification rule. By reissuing the rule, the FCC tortures the plain meaning of the CRA and flouts the will of Congress.

## CONCLUSION

This Court should set aside the 2024 Data Breach Reporting Requirements Rule.

May 29, 2024

Respectfully submitted,

John Anderson Jung
   *Counsel of Record*
TECHFREEDOM
1500 K. Street NW, Floor 2
Washington, D.C. 20005
ajung@techfreedom.org

*Counsel for* Amicus Curiae

# CERTIFICATE OF COMPLIANCE

1. This brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) and 32(a)(7)(B) because:

    ☒ this brief contains 1952 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 32(f), *or*

    ☐ this brief uses a monospaced typeface and contains _____ lines of text, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii) and 32(f).

2. This brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because:

    ☒ this brief has been prepared in a proportionally spaced typeface using <u>Microsoft Word 2016</u> in <u>14-point Century Schoolbook</u>, *or*

    ☐ this brief has been prepared in a monospaced spaced typeface using *(state name and version of word processing program)* _____ with *(state number of characters per inch and name of type style)* _____ _____.

<u>/s/ *John Anderson Jung*</u>
John Anderson Jung
*Counsel for Amicus Curiae*

## CERTIFICATE OF FILING AND SERVICE

I hereby certify that I electronically filed the foregoing with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on May 29, 2024. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *John Anderson Jung*
John Anderson Jung
*Counsel for Amicus Curiae*
