Nos. 24-3133, 24-3206, 24-3252

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

OHIO TELECOM ASSOCIATION, TEXAS ASSOIACATION OF
BUSINESS, CTIA–THE WIRLESS ASSOIACATION, NCTA–THE
INTERNET & TELEVISION ASSOCIATION, and USTELECOM–THE
BROADBAND ASSOCIATION,

*Petitioners,*

HAMILTON RELAY, INC.,

*Intervenor,*
v.

FEDERAL COMMUNICATIONS COMMISSION, UNITED STATES
OF AMERICA,

*Respondents.*

On Petition for Review from the Federal Communications Commission

**BRIEF OF IOWA AND 21 ADDITIONAL STATES
SUPPORTING PETITIONERS, VACATING THE PANEL AND
REHEARING EN BANC**

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)

October 6, 2025              eric.wessan@ag.iowa.gov

*Counsel for Amicus Iowa Attorney General's Office*
*(Additional counsel listed after signature block)*

i

# TABLE OF CONTENTS

TABLE OF CONTENTS ...............................................................i

TABLE OF AUTHORITIES.........................................................ii

STATEMENT OF AMICUS CURIAE .....................................1

SUMMARY OF ARGUMENT ...................................................4

ARGUMENT..............................................................................4

    I.   The Congressional Review Act Bars FCC's 2024 Order Because it is "Substantially the Same" as the 2016 Order....................................4

CONCLUSION ........................................................................12

ADDITIONAL COUNSEL .....................................................14

CERTIFICATE OF COMPLIANCE .......................................15

CERTIFICATE OF SERVICE.................................................15

# TABLE OF AUTHORITIES

Cases

*Citizens for Const. Integrity v. United States*,
  57 F.4th 750 (10th Cir. 2023) ............................................................5, 6
*Ohio Telecom Ass'n v. FCC*,
  2025 WL 2331753 (6th Cir. Aug. 13, 2025) .....................3, 9, 10, 11, 12

Statutes

5 U.S.C. § 551(4) ............................................................................6
5 U.S.C. § 801(b) ........................................................2, 5, 6, 7, 10, 12
5 U.S.C. § 804(3) ............................................................................6
47 U.S.C. § 222 ...........................................................................1, 10

## STATEMENT OF AMICUS CURIAE

What Congress gives, Congress may take away. Congress tasked the Federal Communications Commission ("FCC") with ensuring that telecommunication carriers are protecting the privacy of customer information. *See* Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56; 47 U.S.C. § 222. Congress set out specific requirements on the type of information FCC is to protect. FCC is to ensure that carriers protect the confidentiality of customer proprietary network information ("CPNI")—data about a consumer's telephone service including times, dates, duration, receiver of calls, a consumer's network they subscribe to, and information found on one's telephone bill. 47 U.S.C. § 222(h)(1). And Congress limited carriers on how and when they can use CPNI. *Id.* § 222(c).

In 1998, FCC issued its first rule under the authority granted to it from section 222. *See* Implementation of the Telecommunications Act of 1996, 13 FCC Rcd. 8061 (1998). And FCC has continued to issue rules under that authority over the last several decades. In 2016, FCC issued an omnibus Broadband Privacy Order that sought to "apply the privacy requirements of the Communications Act of 1934 . . . [to] broadband

Internet access service." *See* Protecting the Privacy of Customers of Broadband & Other Telecommunications Services, 31 FCC Rcd. 13911, 13912 (2016) ("2016 Order"). FCC's order covered CPNI data and another category of customer data—personally identifiable information ("PII"). *Id.* at 13928. The order defined PII as "any information that is linked or reasonably linkable to an individual or device," including a person's name, email, birthdate, or Social Security number. *Id.* at 13944, 13946, 14081. As relevant here, the order amended FCC's data breach requirements to apply prospectively to breaches of CPNI and PII. *Id.* at 14085–86.

FCC submitted the order to Congress for its review under the Congressional Review Act ("CRA"), a decades-old mechanism by which Congress can hold accountable the executive agencies it creates. Congress disapproved of the order under the CRA. *See* Pub. L. No. 115-22, 131 Stat. 88 (2017) ("2017 Disapproval"). Then the President signed the disapproval resolution. *See id.* And when Congress passes, and the President signs, a "joint resolution" of disapproval, then the rule "shall not . . . continue," and "may not be reissued in substantially the same form." 5 U.S.C. § 801(b). So FCC rescinded the 2016 order.

Years later, in February 2024, FCC issued a new order specifically dealing with data breach reporting requirements. *See* Data Breach Reporting Requirements, 89 Fed. Reg. 9968 (2024) ("2024 Order"). FCC again said data breach notification requirements cover both CPNI and PII. *See id.* at 9968. In other words, the 2024 order reenacts one part of the 2016 disapproved order. FCC claims that despite the 2024 order reenacting part of the 2016 order, that the two were not "substantially the same." *Id.* at 9993. A panel of this Court agreed, over dissent. *See Ohio Telecom Ass'n v. FCC*, 2025 WL 2331753, at *21 (6th Cir. Aug. 13, 2025).

The undersigned amici curiae are 22 Attorneys General. Across the United States, States have challenged agency rules that should have been foreclosed from reenactment by the Congressional Review Act. States have an interest in ensuring that the limits the CRA imposes are followed by agencies and applied by the courts. And here, that is why the Amici States support rehearing. The 2024 order is substantially like the rescinded 2016 order for purposes of the CRA. Agencies cannot circumvent the CRA by reimposing rules, piecemeal, what the political branches have already disapproved. This Court should grant rehearing.

## SUMMARY OF ARGUMENT

1.    The Congressional Review Act forbids agencies from reenacting rules after Congress disapproved of those rules if they are "substantially the same." FCC's 2024 order is "substantially the same" as FCC's 2016 order that Congress disapproved. Thus, the 2024 order is unlawful. This Court should grant en banc rehearing to align its precedent with what is required by the Congressional Review Act.

## ARGUMENT

## I.    The Congressional Review Act Bars FCC's 2024 Order Because it is "Substantially the Same" as the 2016 Order.

FCC's 2016 order, since rescinded by Congress and the President, comprised several parts. Congress and the President's CRA disapproval of the order disapproved of the whole order, including each constituent part. In doing so, Congress and the President removed the agency's delegated authority to enact that rule in any substantially similar way, in whole or in part. Yet in 2024, FCC reenacted one part of the 2016 disapproved rule, with only minor, technical differences. The 2024 rule is substantially the same as its coordinate part in the 2016 disapproved rule. The CRA thus blocks the 2024 rule.

But the panel majority would allow an agency to re-enact a disapproved rule so long as it does so in parts. That interpretation threatens to swallow the CRA's democratic check on agency action.

1. The CRA establishes an expedited legislative procedure for Congress to review, and ultimately disapprove, rules issued by federal agencies. Pub. L. No. 104-121, § 251, 110 Stat. 847, 868–74 (1996) (codified as 5 U.S.C. §§ 801–808). The CRA requires federal agencies to "submit to each House of the Congress and to the Comptroller General" each rule it promulgates, along with a report that includes "a concise general statement relating to the rule." *Id.* § 801(a)(1)(A). Once Congress receives the rule, it generally has sixty days to introduce a joint resolution if it wishes to disapprove of it. *Id.* § 802(a).

If Congress passes, and the President signs, a "joint resolution of disapproval" of an agency's rule, then the rule "shall not take effect (or continue)," and the rule "may not be reissued in substantially the same form" unless "specifically authorized by a law enacted after the date of the joint resolution." 5 U.S.C. § 801(b). The joint resolution is federal law, enacted in accordance with the constitutional requirements of bicameralism and presentment. *See*, *e.g.*, *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 763–64 (10th Cir. 2023). One feature of the CRA is that joint resolutions are put on a legislative fast track that is

exempt from the Senate's ordinary filibuster rule and that limits the motions that Senators raise. *Id.* § 802(d).

When Congress disapproves of an agency order, it disapproves of each of that order's parts. Indeed, for purposes of the CRA, Congress defines a "rule" as "the whole *or a part of* an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4) (emphasis added); *see* 5 U.S.C. § 804(3). So when Congress disapproves of a rule, it similarly disapproves of "the whole or [] part of" that rule. 5 U.S.C. § 551(4).

It is illogical to conclude that, when Congress rejects a rule with multiple parts, the agency remains free to reissue those very same parts as a whole or in part without Congressional approval. Indeed, if Congress wants an agency to reinstate a rule, "it can simply pass a law saying so." *Citizens for Const. Integrity*, 57 F.4th at 765. That rejects the statute's text and purpose. Indeed, the CRA states that when Congress disapproves a rule then the rule is to have "no force or effect." 5 U.S.C. § 801(b). By holding that an agency is free to reissue parts of rules that have been struck down by the CRA, those rules are then given the force and effect of law.

Further, the CRA states that unless there has been approval, the rule "may not be reissued in substantially the same form." 5 U.S.C. § 801(b). The text does not say "exactly the same form" and to require that all the parts of a rule be included in a subsequent rule replaces the word "substantially" with "identically."

Finally, the purpose of the CRA is for Congress to have "a tool [it] can use to overturn certain federal agency actions." Maeve P. Carey & Christopher M. Davis, Cong. Rsch. Serv., IF10023, The Congressional Review Act (CRA): A Brief Overview 1 (2024). If agencies can re-enact a disapproved rule so long as it does so part by part, the purpose of the CRA is void.

2. In 2016, FCC promulgated an order titled Protecting the Privacy of Customers of Broadband and other Telecommunications Services. *See* 2016 Order, 31 FCC Rcd. 13911. The order imposed data privacy and security requirements on different types of communication service providers. *See id.* at 13912. The order listed its scope of coverage concerning what communication providers the rules applied to and what customer information was protected under the order. *Id.* at 13924–56, 14080. Importantly, FCC defined the information covered as "customer

7

proprietary information." *Id.* at 13941, 14080. Customer propriety information included CPNI and PII. *Id.* at 13942, 14081. The order broadly defined PII as "any information that is linked or reasonably linkable to an individual or device," including a person's name, email, birthdate, or Social Security number. *Id.* at 13944, 13946, 14081.

The order went on to describe notice requirements of privacy policies for carriers to inform customers. *Id.* at 14081–82. Next, it laid out how carriers are to obtain opt-in and opt-out approval from customers on the sharing of their information. *Id.* at 14083–84. And it explained the factors that carriers must consider in implementing security measures. *Id.* at 14084–85. The order then explained that data breach notification requirements now applied to CPNI and PII. *Id.* at 14085–86. And it addressed how carriers could use different security regimes, how to obtain waiver of privacy rights, and how the rules affected state law. *Id.* at 14086–87.

Congress responded to FCC's 2016 omnibus order with disapproval under the CRA. *See* 2017 Disapproval. And for good reason: The order imposed regulations on a wide array of consumer data, going beyond the authority Congress had delegated FCC. So Congress disapproved of the

2016 order to ensure that FCC was exercising only its delegated authority—establishing duties to protect the confidentiality of CPNI data—and not going beyond its authority to establish requirements for other types of customer data.

Eight years later, FCC decided to try again and adopted a new order titled Data Breach Reporting Requirements. That 2024 order and the 2016 order have many similarities—they have the same scope, essentially the same definition of breach, the same state of mind requirement for breach, the same agencies that must be notified, and the same timeline for customer notification. *See* 2024 Order at 9968, 10002–03; 2016 Order at 13928, 14080, 14085–86; *Ohio Telecom Ass'n*, 2025 WL 2331753, at *23 (Griffin, J., dissenting) (provides a table that "helps to visualize just how similar these rules are").

There are "minor, technical differences" between the two orders but none of those distinctions relate to the "nearly identical regimes for reporting breaches of customer PII." *Ohio Telecom Ass'n*, 2025 WL 2331753, at *24 (Griffin, J., dissenting). The two rules have the same definition of protected data, both including CPNI and PII. *Compare* 2024 Order at 10003 *with* 2016 Order at 14080. And the difference between

9

CPNI and PII are significant. While CPNI refers to a limited and narrow category of customer information, PII as defined in both the 2016 and 2024 orders, encompasses a much broader range of customer information. *See* 2016 Order at 14081; 2024 Order at 10003. By including PII in its definition, FCC dramatically enlarged the scope of carriers' data-breach reporting obligations. And that expansion goes beyond what Congress authorized FCC to protect—CPNI data. 47 U.S.C. § 222(h)(1).

That the two rules have minor, technical differences does not alter the CRA's effect. Indeed, CRA disapproval does not block only later-enacted identical rules; it blocks later-enacted rules that are "substantially the same." 5 U.S.C. § 801(b)(2). And because the 2024 rule is substantially the same as the relevant part of the 2016 rule, the 2024 rule should be voided. Any other conclusion would arm administrative agencies with a weapon to avoid political accountability under the CRA.

By disagreeing, the panel here not only recognized that weapon it loaded it and handed it to FCC. *Ohio Telecom Ass'n*, 2025 WL 2331753, at *21. Even worse, there is nothing limiting that weapons use to only FCC. According to the majority, the 2024 rule was not "substantially the same" as the 2016 rule because it addressed only one of the subjects

contained in the 2016 rule—data breach reporting requirements. *Id.* at *19–21. That means that any disapproved rule could be impermissibly repromulgated by an agency so long as the agency did so in parts.

Under the panel majority's view, an agency remains free to readopt a disapproved rule part by part. That interpretation creates an exception that would swallow the entirety of the CRA's intended effect. When Congress disapproved of the 2016 order the resolution stated, "Congress disapproves the rule submitted by the Federal Communications Commission . . . and such rule shall have no force or effect." 2017 Disapproval. That disapproved rule contained a part requiring carriers to report any data breaches involving PII. 2016 Order at 14085–86.

The panel majority's interpretation of the CRA improperly puts Congress's will below that of an administrative agency. Congress is the one vested with legislative power. And while it may delegate rulemaking authority to agencies, when Congress disagrees with an agency through the CRA, it removes that part of the agency's delegated authority. The majority's interpretation would permit agencies to undermine Congress's rejection with little difficulty. As the dissent put it, the majority's "interpretation, rather than giving effect to congressional intent, merely

encourages creative ways to flaunt it." *Ohio Telecom Ass'n*, 2025 WL 2331753, at *25 (Griffn, J., dissenting). The two orders here are "substantially the same." 5 U.S.C. § 801(b)(2). FCC should not be allowed to circumvent Congress's disapproval.

\* \* \*

Congress passed the CRA with large bipartisan majorities before President Clinton signed it into law in 1996. For many reasons, the CRA is a tool that has almost exclusively been used after a change in presidential administration. No federal appeals court before has authorized an agency to evade the CRA through piecemeal rulemaking. This vital issue is worthy of en banc reconsideration to bring this Court in line with the CRA's text.

## CONCLUSION

The Court should grant Petitioners motion for rehearing.

October 6, 2025

Respectfully submitted,

BRENNA BIRD
Iowa Attorney General

*/s/ Eric Wessan*
ERIC WESSAN
*Solicitor General*
Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
Phone: (515) 823-9117
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

## ADDITIONAL COUNSEL

Steve Marshall
Attorney General of Alabama

Stephen J. Cox
Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

James Uthmeier
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Kris Kobach
Attorney General of Kansas

Rusell M. Coleman
Attorney General of Kentucky

Liz Murrill
Attorney General of Louisiana

Lynn Fitch
Attorney General of Mississippi

Catherine Hanaway
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

Drew Wrigley
Attorney General of
North Dakota

Gentner Drummond
Attorney General of Oklahoma

Alan Wilson
Attorney General of
South Carolina

Marty Jackley
Attorney General of
South Dakota

Jonathan Skrmetti
Attorney General of Tennessee

Ken Paxton
Attorney General of Texas

John B. McCuskey
Attorney General of
West Virginia

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because this brief contains 2,388 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); *see* Fed. R. App. P. 40(d)(3)(A).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: October 6, 2025

/s/ *Eric H. Wessan*
Solicitor General

## CERTIFICATE OF SERVICE

The undersigned certifies that on the sixth day of October, 2025, this brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ *Eric H. Wessan*
Solicitor General