**Nos. 24-3133, 24-3206, 24-3252**

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT

OHIO TELECOM ASSOCIATION; TEXAS ASSOCIATION OF BUSINESS;
CTIA – THE WIRELESS ASSOCIATION;
NCTA – THE INTERNET & TELEVISION ASSOCIATION;
USTELECOM – THE BROADBAND ASSOCIATION,

*Petitioners*,

HAMILTON RELAY, INC.,

*Intervenor*,

v.

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA,

*Respondents*.

On Petitions For Review Of An Order Of The
Federal Communications Commission, Agency No. 23-111

## REPLY IN SUPPORT OF PETITION FOR REHEARING EN BANC

Roman Martinez
Matthew A. Brill
Matthew T. Murchison
Christina R. Gay
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ............................................................................. ii

INTRODUCTION ........................................................................................1

ARGUMENT ..............................................................................................2

CONCLUSION .........................................................................................11

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Fields v. Jordan,*
 86 F.4th 218 (6th Cir. 2023) ...................................................................8

*Mitts v. Bagley,*
 626 F.3d 366 (6th Cir. 2010) ............................................................8, 10

*Preterm-Cleveland v. McCloud,*
 994 F.3d 512 (6th Cir. 2021) ...................................................................8

*RadLAX Gateway Hotel, LLC v. Amalgamated Bank,*
 566 U.S. 639 (2012) ...................................................................................9

*Safari Club International v. Haaland,*
 31 F.4th 1157 (9th Cir. 2022) ..................................................................4

## STATUTES

5 U.S.C. § 551(4) ...........................................................................................2

5 U.S.C. § 801(b)(2).................................................................................2, 4

5 U.S.C. § 804(3) ...........................................................................................2

47 U.S.C. § 201(b) ........................................................................................3

## OTHER AUTHORITIES

Fed. R. App. P. 40(b)(2)(D) ......................................................................7

Fed. R. App. P. 40(c) ...................................................................................7

*Improving Customer Service and Protecting Consumers Through
 Onshoring,* FCC 26-16 (Mar. 27, 2026) ..............................................6

**INTRODUCTION**

Remarkably, the government's response does not defend the panel's interpretation of the Congressional Review Act (CRA). It does not defend the panel's reading of Section 201(b) of the Communications Act. And it does not engage—or even acknowledge—a single one of the seven amicus briefs explaining why both holdings are wrong and deeply consequential. The government's silence on the merits speaks volumes.

Rather than defend the panel's decision, the government urges the Court to deny en banc review based on its contention (at 1-3) that this case is "narrow" and of "limited significance." But 24 Members of Congress, 22 States, leading national business and legal organizations, and the Senate staffer who drafted the disapproval resolution all beg to differ. *See* Members of Congress Br. 2-3, 9-13, ECF 72; States Br. 4-12, ECF 69; WLF/NFIB Br. 2-6, ECF 70; AmFree Br. 2-10, ECF 84; TechFreedom Br. 2-12, ECF 71; Cato Br. 2-5, ECF 73; Fragoso Br. 3-5, 13-14, ECF 85. As they explain, the panel decision "threatens to swallow the CRA's democratic check on agency action," States Br. 4, while "invit[ing] agencies to treat decades-old statutes as blank checks to regulate modern controversies," Cato Br. 5. Together, these holdings strip Congress of a critical tool it needs to keep agencies within their statutory bounds. The panel's ruling should not stand. This Court should grant rehearing and set aside the FCC's unlawful rule.

**ARGUMENT**

1.  It is easy to see why the government cannot bring itself to defend the panel's construction of the CRA's reissuance bar or its boundless reading of Section 201(b). On the CRA, the panel first held that the statute's reissuance bar requires comparing a new rule to the *entire* disapproved order, not to any constituent part. Op. 32-34; Pet. 6-8. But the CRA defines a "rule" as "the whole *or a part of* an agency statement." 5 U.S.C. §§ 551(4), 804(3) (emphasis added); AmFree Br. 8-9. The panel simply read "a part of" out of the statute. It then blamed Congress for not specifying which parts of the order it meant to disapprove—even though the CRA's resolution template made such specification impossible. Fragoso Br. 6-9; Members of Congress Br. 10-11; AmFree Br. 7-8. Twenty-two States warn that this holding "arm[s] administrative agencies with a weapon to avoid political accountability under the CRA." States Br. 10. In the panel's view, all an agency needs to do is reissue disapproved rules piecemeal, and Congress's enactment of a disapproval resolution counts for nothing.

The panel's fallback CRA reasoning—that the 2016 and 2024 rules are not "'substantially the same,'" despite what Judge Griffin correctly identified as "nearly identical regimes for reporting breaches of customer PII," Dissent 40—fares no better. That conclusion is possible only by rewriting the CRA's term "'substantially the same'" to mean "identical[]." States Br. 7 (quoting 5 U.S.C. § 801(b)(2)). Under

2

the panel's standard, any agency can resurrect any disapproved rule by making "some minor modifications" while leaving the rule's substance intact. AmFree Br. 5. Nothing in the CRA supports that result.

On Section 201(b), the panel's error is equally fundamental. It stretched a single word—"'practices'"—in a 90-year-old statute into a sweeping grant of consumer-privacy authority that Congress never conferred and has elsewhere specifically circumscribed. Pet. 11-13 (quoting Op. 26); *see* 47 U.S.C. § 201(b). But Section 201(b)'s "history and context show that it covers only rates, classifications, and service conditions—not privacy rules." Cato Br. 3. The panel's contrary reading not only "render[s] Section 222—and many other specific provisions of the Communications Act—superfluous," but also "transform[s] the FCC into a general consumer protection agency—something Congress never authorized." *Id.* at 8-10.

2. Unable to defend the panel's reasoning on the merits, the government falls back to arguing that the consequences are limited. That is demonstrably false: The panel's decision renders the CRA's reissuance bar a virtual dead letter, reinstating agency powers that Congress intended to abrogate.

Start with what the government conspicuously refuses to address—the panel's primary CRA holding that the statute's reissuance bar requires comparing a new rule to the *entire* disapproved order, not its constituent parts. Op. 32-34; Pet. 5-9. This

is the first judicial construction of the reissuance bar's scope.* And its consequences are staggering. It "creates an enormous loophole for recalcitrant agencies to re-issue discrete subsets of disapproved regulations"—like "a hydra" where "Congress may lop off one rule's head but see a dozen more grow back." AmFree Br. 11, 13. As 24 Members of Congress put it, "[t]here is little point in passing a disapproval resolution if"—as the panel held—"the agency could simply reissue the same rule piecemeal and force Congress to play whack-a-mole." Members of Congress Br. 11. All 42 CRA disapproval resolutions enacted to date—covering everything from data privacy to energy efficiency to wildlife management—are vulnerable under the panel's logic. TechFreedom Br. 6-12. The government does not say a word about any of this.

The government's only retort (at 16) is to label these "policy concerns" and dismiss them as "exaggerated." But the FCC's own Chairman previously disagreed—forcefully. Dissenting from the very FCC order at issue, then-

---

* The government claims (at 15) that the panel's atextual reading of the CRA is "entirely consistent" with *Safari Club International v. Haaland*, 31 F.4th 1157 (9th Cir. 2022). But *Safari Club* is inapposite on its face. *See* Petrs. Reply Br. 21-22. There, the question was whether Congress's disapproval of one rule automatically voided a *different*, *pre-existing* rule that had been on the books for years. 31 F.4th at 1169. The Ninth Circuit said no—because the older rule was not a "new rule" subject to the CRA's reissuance bar in the first place. *Id.* at 1169-70. That holding was correct. And it has no bearing here, where the 2024 Reporting Rule unquestionably *is* a "new rule" promulgated *after* Congress disapproved the 2016 Reporting Rule. 5 U.S.C. § 801(b)(2).

Commissioner Carr warned that the FCC's position "reads the CRA out of the United States Code altogether." A98; *see also* A102-03 (Simington Dissent) (similar). Twenty-four Members of Congress, 22 State Attorneys General, and 5 national organizations have now told this Court precisely the same thing. The government does not even mention these amici, let alone answer them.

The panel's fallback holding—that the 2016 and 2024 rules are not "substantially the same"—only compounds the damage. The government characterizes (at 17) this holding as a mere "fact[ual]" determination unworthy of en banc review. But the error is legal, not factual: The panel applied a standard that demands virtual "identity[]" between two rules, where the CRA requires only "substantial[]" similarity. States Br. 7; *see* Members of Congress Br. 11-12. The government does not dispute that the differences the panel seized on are "minor, technical" tweaks that do nothing to change "the nearly identical regimes for reporting breaches of customer PII." Dissent 40. If such cosmetic changes suffice to escape the CRA's reissuance bar, the bar is toothless. Any agency facing a CRA disapproval need only tweak a few words and repackage the substance of the disapproved rule in a new order—and under the panel's logic, that is perfectly fine. As Judge Griffin warned, that approach "give[s] administrative agencies an obvious way to circumvent the CRA." *Id.*

3. The government is equally wrong to deny the importance of the panel's Section 201(b) holding. The government insists (at 3, 17) that the panel decided only the "narrow question" of "which particular classification of customer data" the FCC may regulate. That is revisionist history. What the panel actually held is far broader: that the word "practices" in Section 201(b) empowers the FCC to regulate "the assortment of practices that directly implicate a carrier's furnishing of communication services"— a formulation so capacious that it could encompass activities well outside the agency's traditional bailiwick. Op. 17-19; *see* Dissent 45, 49. The majority offered no limiting principle. And when pressed at oral argument to supply one, the government could only promise that its "application of Section 201(b) has no such far-reaching ambition." Dissent 45. A non-binding pledge of self-restraint is not a limiting principle. And the government's brief to this Court does not even try to fill the void.

The FCC's own conduct since the panel decision undermines the government's assurances here. Just months after the panel decision—and while this petition was pending—the FCC launched a sweeping new rulemaking that expressly invokes the panel's Section 201(b) holding to claim authority over where carriers locate their call centers, what language their employees speak, what percentage of calls may be handled abroad, and in which countries carriers may operate. *Improving Customer Service and Protecting Consumers Through Onshoring*, FCC

6

26-16, ¶¶ 78-79, 86 & n.104 (Mar. 27, 2026). That rulemaking proposal reads the panel's decision as a license to regulate any carrier activity it can plausibly characterize as a "practice"—which is to say, virtually anything. That is a far cry from "limited significance." Resp. 3. Unless this Court intervenes, the panel's Section 201(b) holding will remain a loaded weapon in the FCC's arsenal—available whenever it wishes to stretch its authority beyond the limits Congress imposed.

The government's characterization of the Section 201(b) holding as "narrow" also collapses on its own terms. The supposedly modest question of "which particular classification of customer data" the FCC may regulate, Resp. 3, 17, is one the FCC's own Chairman previously deemed momentous. In dissent, then-Commissioner Carr warned that extending data-breach rules to personally identifiable information reflects an "expansive interpretation of the Commission's authority" that exceeds the "clear bounds" Congress imposed. A99. That assessment was—and remains—absolutely correct. An agency acting ultra vires is not a matter of "limited significance." Resp. 3.

4. Finally, the government leans hard (at 14-15) into the absence of a circuit split. But a split has never been required for en banc rehearing. Rule 40(b)(2)(D) independently authorizes en banc review whenever a case "involves one or more questions of exceptional importance." Fed. R. App. P. 40(b)(2)(D); *id.* at 40(c) (en banc rehearing may be ordered "if *one* of the criteria in Rule 40(b)(2)(A)-(D) is met")

(emphasis added). This Court has granted rehearing on that basis alone, and done so repeatedly. *See, e.g.*, *Fields v. Jordan*, 86 F.4th 218 (6th Cir. 2023); *Preterm-Cleveland v. McCloud*, 994 F.3d 512 (6th Cir. 2021). And that standard is readily satisfied here, where the panel issued the sole judicial construction of the CRA's reissuance bar—at a time when Congress is deploying the CRA with unprecedented frequency—and simultaneously adopted a boundless reading of Section 201(b) that the FCC is already wielding to assert powers Congress never granted.

The government's repeated invocations (at 4, 14, 19-20) of Chief Judge Sutton's concurrence in *Mitts v. Bagley*, 626 F.3d 366 (6th Cir. 2010), do not help it. That opinion did not treat the absence of a split as dispositive. To the contrary, Chief Judge Sutton independently assessed each of the "traditional grounds for full court review"—"circuit split," "intra-circuit conflict," and "important federal question"— and found *none* present. *Id.* at 370. Unlike *Mitts*, this case presents two issues of exceptional importance on which no other court has spoken—and on which 24 Members of Congress, 22 States, and 5 national organizations have urged this Court to act.

Nor is waiting for a circuit split on the CRA question even a realistic option. CRA disputes typically arise only in the narrow window following a change in presidential administrations, meaning "it would likely take years for a circuit split to emerge." Fragoso Br. 13. Far from supporting the government's position, that

structural reality makes en banc review *more* urgent. Absent the full Court's review, the panel's decision will stand as the sole precedent on the CRA's reissuance bar—"confusing Congress as it enacts further resolutions of disapproval, as well as executive agencies as they navigate the parameters of substantial similarity." *Id.* at 14. This Court should correct the errors now, rather than leave an erroneous decision standing as the only precedent on a statute of surpassing importance to the separation of powers.

The government's no-split argument on Section 201(b) fares no better. The government contends (at 15-16) that the out-of-circuit cases petitioners cited merely "apply the same specific/general principles" in "different statutory contexts." But petitioners' argument is not that the panel misapplied a familiar canon to particular facts; it is that the panel rewrote the canon entirely, by holding that it does not apply unless the specific provision independently grants the agency the authority it claims. Pet. 12-13. That gets the canon exactly backwards—the whole point of the general/specific principle is to prevent general provisions from authorizing what Congress's specific scheme does not. No other court of appeals has adopted such a rule. The government does not defend it. And the government nowhere addresses *RadLAX Gateway Hotel, LLC v. Amalgamated Bank*, 566 U.S. 639 (2012), which squarely holds that a specific statutory scheme displaces a general one even absent a "direct conflict." *See id.* at 645; Pet. 12-13. The panel's construction of Section

9

201(b) cannot be squared with that precedent or with the standard approach to the general/specific canon embraced by other circuits.

*　　*　　*

In short, the government's refrain (at 20) that the en banc petition is all "mere disagreement on the merits" blinks reality. Twenty-four Members of Congress do not file amicus briefs in "run-of-the-mine" cases. *Mitts*, 626 F.3d at 370 (Sutton, J., concurring). Neither do 22 State Attorneys General. And the government does not ask a court to hold a petition for rehearing in abeyance for seven months while it "evaluate[s]" the underlying rule, Resp. 1-2, if the decision upholding that rule is beyond reproach. The government's own conduct—and its studied refusal to defend the panel's reasoning—is powerful evidence that this case is anything but routine.

As Judge Griffin warned, the panel decision "shift[s] legislative power from Congress to an administrative agency." Dissent 42. Left uncorrected, it will stand as an open invitation for agencies to circumvent the will of Congress and claim powers that Congress never conferred—and has affirmatively taken away. This Court should grant rehearing en banc.

10

## CONCLUSION

The petition should be granted.

Dated:  July 6, 2026

Respectfully submitted,

*s/ Roman Martinez*
Roman Martinez
Matthew A. Brill
Matthew T. Murchison
Christina R. Gay
LATHAM & WATKINS LLP
555 Eleventh Street, NW
Suite 1000
Washington, DC 20004
(202) 637-2200
roman.martinez@lw.com

*Counsel for Petitioners*

# CERTIFICATE OF COMPLIANCE

This brief complies with the type-face and type-style rules of Federal Rule of Appellate Procedure 32(a)(5) and (6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 40(d)(3) because it contains 2,368 words, including the text in graphics, and excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and 6th Cir. R. 32(b).

*s/ Roman Martinez*
Roman Martinez

# CERTIFICATE OF SERVICE

I hereby certify that on July 6, 2026, I electronically filed the foregoing Reply in Support of Petition for Rehearing En Banc with the Clerk of Court of the United States Court of Appeals for the Sixth Circuit by using the CM/ECF system. Participants here are registered CM/ECF users and will be served by the CM/ECF system.

*s/ Roman Martinez*
Roman Martinez