# In the United States Court of Appeals for the Sixth Circuit

OHIO TELECOM ASSOCIATION,
*Petitioner,*

HAMILTON RELAY, INC., *Intervenor,*
*v.*

FEDERAL COMMUNICATIONS COMMISSION;
UNITED STATES OF AMERICA, *Respondents.*

*ON PETITION FOR REVIEW FROM A FINAL ORDER BY THE FEDERAL COMMUNICATIONS COMISSION*

## *AMICUS CURIAE* BRIEF OF THE AMERICAN FREE ENTERPRISE CHAMBER OF COMMERCE IN SUPPORT OF PETITION FOR REHEARING *EN BANC*

Michael B. Buschbacher
James R. Wedeking
BOYDEN GRAY PLLC
800 Connecticut Avenue, NW, Ste 900
Washington, DC 20006
(202) 955-6000
mbuschbacher@boydengray.com

Counsel for *Amicus Curiae*

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: __24-3133 et al.__     Case Name: __Ohio Telecom Ass'n et al. v. FCC__

Name of counsel: __James R. Wedeking__

Pursuant to 6th Cir. R. 26.1, __American Free Enterprise Chamber of Commerce__
*Name of Party*

makes the following disclosure:

1.    Is said party a subsidiary or affiliate of a publicly owned corporation?  If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

> No

2.    Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome?  If yes, list the identity of such corporation and the nature of the financial interest:

> No

---

CERTIFICATE OF SERVICE

I certify that on _____ October 6, 2025 _____ the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/ __James R. Wedeking__

_____

_____

This statement is filed twice:  when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents.  See 6th Cir. R. 26.1 on page 2 of this form.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................... iii

INTEREST OF *AMICUS CURIAE* ........................................................ 1

INTRODUCTION .............................................................................. 2

ARGUMENT ..................................................................................... 5

   I.   The Panel Majority Misinterpreted the CRA's Definition of a "Rule" ......................................................................................... 5

   II.  The Preclusive Effect of a Rule's Disapproval Was Well Known to Congress ................................................................................ 10

   III. The Panel Majority Greatly Underestimated the Damage Its Interpretation Does to the Congressional Review Act ........................ 11

CONCLUSION ................................................................................. 13

CERTIFICATE OF SERVICE ............................................................. 15

# TABLE OF AUTHORITIES

**Cases**                                                        **Page(s)**

*Diamond Alt. Energy, LLC v. EPA,*
    145 S. Ct. 2121 (2025) ........................................................................ 3

*Potter v. United States,*
    155 U.S. 438 (1894) ............................................................................ 9

*Students for Fair Admissions, Inc. v. President & Fellows of*
    *Harvard Coll.,*
    600 U.S. 181 (2023) ............................................................................ 7

*TrW, Inc. v. Andrews,*
    534 U.S. 19 (2001) .............................................................................. 9

*United States v. Menasche,*
    348 U.S. 528 (1955) ............................................................................ 9

**Statutes**

5 U.S.C. § 551(4) ....................................................................................... 6, 8

5 U.S.C. § 801(b)(2) ............................................................................... 3, 4, 7

5 U.S.C. § 802 ............................................................................................... 2

5 U.S.C. § 802(a) .......................................................................................... 7

5 U.S.C. § 802(d) .......................................................................................... 2

5 U.S.C. § 804(3) .......................................................................................... 6

5 U.S.C. § 805 ............................................................................................... 3

Pub. L. No. 115-22, 131 Stat. 88 (2017) ..................................................... 4

Pub. L. No. 119-6, 139 Stat. 49 (May 9, 2025) ......................................... 12

Pub. L. No. 119-7, 139 Stat. 50 (May 9, 2025) ......................................... 12

Pub. L. No. 119-8, 139 Stat. 51 (May 9, 2025) ......................................... 12

Pub. L. No. 119-9, 139 Stat. 52 (May 9, 2025)........................................12

**Other Authorities**

163 Cong. Rec. H2478 (Mar. 28, 2017) ...................................................2

163 Cong. Rec. H2479 (Mar. 28, 2017) ...............................................3, 4

163 Cong. Rec. H2481 (Mar. 28, 2017) ..............................................4,11

163 Cong. Rec. H2489 (Mar. 28, 2017) ...................................................4

163 Cong. Rec. H2495 (Mar. 28, 2017) .................................................11

163 Cong. Rec. H2498 (Mar. 28, 2017) .................................................11

89 Fed. Reg. 81,994 (Oct. 8, 2024) .......................................................12

89 Fed. Reg. 104,616 (Dec. 23, 2024) ..................................................12

89 Fed. Reg. 105,188 (Dec. 26, 2024) ..................................................12

90 Fed. Reg. 7,464 (Jan. 21, 2025) .......................................................12

31 FCC Rcd. 13911 (2016) ....................................................................3

# INTEREST OF *AMICUS CURIAE*

Formed in 2022, the American Free Enterprise Chamber of Commerce ("AmFree") is an entity organized consistent with section 501(c)(6) of the Internal Revenue Code that represents hard-working American entrepreneurs and businesses across all sectors of the U.S. economy. AmFree has an interest in this suit because, if allowed to stand, the panel majority's interpretation of the Congressional Review Act provides a blueprint for agencies with an anti-free-market agenda to effectively nullify Congressional disapprovals of agency regulations, robbing AmFree and its members of the certainty that should accompany a binding resolution that is passed by Congress and signed into law by the President. Congress, not the bureaucracy, makes the law, and AmFree's members need assurance that, once Congress kills onerous, unlawful, and expensive regulations, they stay dead.[1]

---

[1] Pursuant to Fed. R. App. P. 29(a)(4)(e), no party's counsel authored this brief in whole or in part; no party or party's counsel contributed money intended to fund the preparation or submission of this brief; and no person, other than the *amicus curiae*, its members, or its counsel, contributed money intended to fund the preparation or submission of this brief.

1

## INTRODUCTION

Congress passed the Congressional Review Act ("CRA") in 1996, codified at 5 U.S.C. §§ 801–8, to re-assert its authority over federal agency regulations. *See, e.g.*, 163 Cong. Rec. H2478 (Mar. 28, 2017) (statement of Rep. Burgess) (CRA operates "so that Congress may remove through the proper legislative process rules promulgated by bureaucrats who remain unaccountable to the American people"). The CRA established special procedures to make it easier for Congress to rescind agency rules through a joint resolution process. *See* 5 U.S.C. § 802 (disapproval process).

Relevant to this case, each Chamber's resolution must use the following language to identify the rule it is rescinding:

> That Congress disapproves the rule submitted by the _____ relating to _____, and such rule shall have no force or effect.

*Id.* § 802(a). The CRA prescribes other streamlined procedures, such as certain limitations on debate, motions, and amendments and, in the Senate, no cloture vote is required—that is, resolutions don't have to satisfy the normal 60-vote filibuster threshold to pass. *Id.* § 802(d).

CRA resolutions are "legislation," not administrative action. *Diamond Alt. Energy, LLC v. EPA*, 145 S. Ct. 2121, 2131 n.1 (2025). And, to make this point clear, the CRA strips courts of jurisdiction to review any "determination, finding, action, or omission" made pursuant to the CRA, *id.* § 805, and prohibits agencies from re-issuing any disapproved rule "in substantially the same form" without legislative authorization, *id.* § 801(b)(2).

On March 28, 2017, Rep. Burgess, a sponsor of House Resolution 230, the companion to Senate Joint Resolution 34, took to the floor and explained how a Federal Communications Commission ("FCC") rule on internet privacy, 31 FCC Rcd. 13911 (2016) ("the 2016 Order"), "adopted a mere 10 days before the 2016 Presidential election" and pushed through on a party-line vote, should be disapproved through the CRA. 163 Cong. Rec. H2479 (2017). He further stated that the FCC's "privacy rules arbitrarily treat internet service providers differently from the rest of the internet," would "result in more frequent breach notifications, leading to a weaker focus on security by consumers," and "create[e] confusion by subjecting parts of the internet ecosystem to different rules and different jurisdictions." *Id.* Rep. Burgess urged the House to join the Senate in

disapproving of the 2016 Order to "restore the status quo that existed prior to the Federal Communications Commission's Open Internet Order." *Id.*

The House entertained opposing views, *see id.* at H2479–86 (statement of Rep. Polis); *id.* at H2489–2501 (floor debate involving 21 Representatives), including about how a CRA disapproval would significantly limit the FCC's authority to enact new privacy rules in the future, *see*, *e.g.*, *id.* at H2481 ("If we go through the process of passing a CRA, the FCC wouldn't be able to pass any rule—or if they did, it would be under a legal cloud—to protect the privacy of the American people.").

After this debate, the House passed its CRA resolution by a 231–189 vote, *id.* at H2478, and the President signed it into law. Pub. L. No. 115-22, 131 Stat. 88 (2017).

According to the panel majority, however, this legislative exercise was virtually pointless. Despite conceding that, "when Congress disapproved the 2016 Order, it nullified every constituent rule contained therein," Slip Opinion ("Slip Op.") at 33, the panel majority misinterpreted the CRA's prohibition on disapproved rules being "reissued in substantially the same form," 5 U.S.C. § 801(b)(2), and allowed the FCC to

re-issue the disapproved privacy rule by simply untethering it from the larger 2016 Order and making some minor modifications. Slip Op. at 32–34.

This turns Congress's emphatic prohibition into a legislative Maginot line, allowing agencies to easily circumvent the CRA by re-issuing disapproved rules piecemeal. Thus, an agency may revive a corpse, not as a corpse, but as an arm here and a leg there until the whole rule walks again as a sort of administrative law Frankenstein's monster.

The panel majority's approach botches a question of enormous importance (and first impression) and renders a key portion of the CRA's definition of a "rule" superfluous. This exposes every CRA resolution to administrative nullification. The entire purpose of the CRA is to make it easier for Congress to control agency regulations, not harder. This Court should grant *en banc* review to correct this false turning.

## ARGUMENT

### I. The Panel Majority Misinterpreted the CRA's Definition of a "Rule"

The panel majority's narrow view of what constitutes a "rule" under the CRA misinterprets the statutory definition. The panel majority acknowledged that the CRA prohibits agencies from re-issuing any "rule"

that is "substantially the same" as a disapproved rule, Slip Op. at 32 (quoting 5 U.S.C. § 801(b)(2)), and that a "rule" includes "'the whole *or a part* of an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy,'" *id.* (quoting 5 U.S.C. §§ 551(4), 804(3)) (emphasis added). The panel majority even admitted that "[i]t is true that when Congress disapproved the 2016 Order, it nullified every constituent rule contained therein." *Id.* at 33. Yet, the panel majority wrongly concluded that the FCC is free to re-issue those "nullified … constituent rule[s]" so long as it does so in a piecemeal fashion. *Id.* at 33.

According to the panel majority, Congress may disapprove a "constituent rule" (*i.e.*, "a part of an agency" action under 5 U.S.C. § 551(4)), but the prohibition on re-issuance applies only if an agency makes a bullheaded attempt to re-issue the disapproved regulation exactly as it existed before: "the CRA makes clear that the prior rule" that is precluded from re-issuance "should be construed as the rule identified in the disapproval resolution." *Id.* at 34. "If Congress intended to prohibit an agency from issuing a new rule that is substantially the same as any part of a prior rule nullified by a disapproval resolution," then (according to the

6

panel majority), Congress must name each and every part explicitly. *Id.* There are several problems with this interpretation.

*First*, contrary to the panel majority's interpretation, the CRA does not define "substantially the same" as "the rule identified in the disapproval resolution," *id.*, a term found nowhere in the statute. The CRA bars agencies from re-issuing a disapproved "rule" "in substantially the same form." 5 U.S.C. § 801(b)(2). Contrary to the panel majority's approach, reviewing courts must look past a rule's name and to its substance. *Cf. Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll.*, 600 U.S. 181, 230 (2023) ("What cannot be done directly cannot be done indirectly. The Constitution deals with substance, not shadows.") (cleaned up). That is why Congress used the word "substantially."

*Second*, the panel majority's approach conflicts with the CRA's required standardized language for disapproval resolutions. *See* 5 U.S.C. § 802(a) (using a fill-in-the-blank form for the regulation's name). As the dissent correctly noted, "[a]lthough the majority asserts that Congress could have made line-by-line disapprovals of the specific rules it wished to reject, the CRA neither requires such specificity nor allows a line-item

veto." Slip Op. at 41 (Griffin, J., dissenting). Thus, to close the loophole that the panel majority created, Congress would have to abandon standardized CRA resolutions and specifically identify every standard or compliance obligation in an agency rule. Nothing in the CRA requires such hyper-specificity. Given that Congress often uses the CRA to disapprove of complex rules, the panel majority's interpretation would render that statute all but useless.

*Third*, the panel majority's interpretation ignores that CRA applies to discrete parts of a rule, not just the whole. The panel majority claimed that "[i]f Congress intended to prohibit an agency from issuing a new rule that is substantially the same as *any part of a prior rule* nullified by a disapproval resolution, it could have said so." *Id.* (emphasis added). But Congress *did* say so. It defined a "rule" subject to the CRA, including the CRA's prohibition on re-issuance, as "the whole *or a part* of an agency" action. 5 U.S.C. § 551(4) (emphasis added). Thus, a substantially similar version of "a part of" a disapproved agency action is a "rule"; as such, it cannot be re-issued as a stand-alone rule following disapproval, as FCC did here. And, while the panel majority noted the "a part of" language in the definition of a "rule," Slip Op. at 30, 32, it gave that

language no role in its analysis. That was a serious error that effectively rewrites the statute and gelds the CRA, shifting Congressional authority to make the law to the executive branch bureaucracy.

"It is 'a cardinal principle of statutory construction' that 'a statute ought, upon the whole, to be construed that, if it can be prevented, no clause, sentence, or word shall be superfluous, void, or insignificant.'" *TrW, Inc. v. Andrews*, 534 U.S. 19, 31 (2001) (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001)); *see also United States v. Menasche*, 348 U.S. 528, 538–39 (1955) ("It is our duty 'to give effect, if possible, to every clause and word of a statute.'") (quoting *Montclair v. Ramsdell*, 107 U.S. 147, 152 (1883)). The panel majority offended this "cardinal principle" by reading the term "a part of" out of the definition of a "rule." However, the panel majority "cannot … regard[]" it "as mere surplusage; it means something." *Potter v. United States*, 155 U.S. 438, 446 (1894).

By ignoring the phrase "a part of," the majority improperly takes an all-or-nothing approach to the CRA's prohibition on re-issuing rules that are "substantially the same" as disapproved rules. Slip Op. at 34 ("to determine whether a new rule is 'substantially the same' as a prior rule, the CRA makes clear that the prior rule should be construed as the rule

9

identified in the disapproval resolution"). Given the CRA's use of standardized resolution templates that list only the whole regulation's formal name, the panel majority's interpretation frustrates Congress's purpose of precluding agencies from re-issuing "a part of" a disapproved rule. Of course, Congress could pass normal legislation to achieve this outcome, but that requires abandoning the CRA and its expedited procedures.

Because the panel majority refused to give effect to a key definitional phrase, the court should grant the petition for *en banc* review.

## II. The Preclusive Effect of a Rule's Disapproval Was Well Known to Congress

The panel majority's misinterpretation of the CRA was guided, in part, by its evident belief that Congress did not fully appreciate the consequences of its actions. It opined that it would be an "anomalous construction of the CRA" to hold that Congressional disapproval prohibited agencies from re-introducing parts or subsets of the disapproved rule, worrying that "[s]uch a prohibition could encompass the narrowest, most anodyne 'agency statement[s] of general or particular applicability and future effect,' including functional provisions such as definitions." Slip Op. at 34 (quoting 5 U.S.C. § 551(4)). That is for Congress to consider

when deciding whether to disapprove of some agency action, not something for the courts to second guess.

Congress was not oblivious to the effect of the CRA disapproval resolution here. *See, e.g.,* 163 Cong. Rec. at H2481 (statement of Rep. Polis) (CRA disapproval resolution "prohibits future implementation of similar rules" and "hamstrings the agency"); *id.* at H2495 (statement of Rep. Matsui) ("this resolution effectively eliminates the FCC from ever acting to protect consumer privacy in the future"); *id.* at H2498 (statement of Rep. Pelosi) ("use of the Congressional Review Act will do permanent damage to the FCC's ability to keep Americans' personal information safe"). Congress considered the resolution's effect on future regulations and voted to approve it anyway. It is not the panel majority's place to side with those who lost that debate by rewriting the law.

## III. The Panel Majority Greatly Underestimated the Damage Its Interpretation Does to the Congressional Review Act

Discarding the phrase "or a part of" from the definition of a "rule," as the panel majority did, creates an enormous loophole for recalcitrant agencies to re-issue discrete subsets of disapproved regulations, or simply re-publish disapproved regulations together in a new package. In fact, the panel majority endorsed such rogue behavior, opining that only an

"atextual and anomalous construction of the CRA" would bar the FCC "from promulgating an entire compendium of rules contained within the 2016 Order, or any other disapproved-of omnibus order." Slip Op. at 34. Thus, under the panel majority's view, Congress' disapproval of four Department of Energy efficiency standards in May 2025[2] would only be a minor roadblock, as the Department could re-issue the standards collectively as a new rule with a new name differing from "the rule identified in the disapproval resolution." *Id.* at 34.

Should the panel majority's interpretation hold, agencies would be incentivized to package their most controversial, burdensome, and opaque regulations together into large, ever-more complex rulemakings.

---

[2] *See* Pub. L. No. 119-6, 139 Stat. 49 (May 9, 2025) (disapproving Energy Conservation Program: Energy Conservation Standards for Consumer Gas-fired Instantaneous Water Heaters, 89 Fed. Reg. 105,188 (Dec. 26, 2024)); Pub. L. No. 119-7, 139 Stat. 50 (May 9, 2025) (disapproving Energy Conservation Program: Energy Conservation Standards for Walk-In Coolers and Walk-In Freezers, 89 Fed. Reg. 104,616 (Dec. 23, 2024)); Pub. L. No. 119-8, 139 Stat. 51 (May 9, 2025) (disapproving Energy Conservation Program for Appliance Standards: Certification Requirements, Labeling Requirements, and Enforcement Provisions for Certain Consumer Products and Commercial Equipment, 89 Fed. Reg. 81,994 (Oct. 8, 2024)); Pub. L. No. 119-9, 139 Stat. 52 (May 9, 2025) (disapproving Energy Conservation Program: Energy Conservation Standards for Commercial Refrigerators, Freezers, and Refrigerator-Freezers, 90 Fed. Reg. 7,464 (Jan. 21, 2025)).

Congressional disapproval would only delay, not defeat, the most obnoxious regulations as agencies would simply re-issue them piecemeal. Like a hydra, Congress may lop off one rule's head but see a dozen more grow back. This is not what Congress intended in drafting the CRA, and it is inconsistent with our constitutional scheme of separated legislative, executive, and judicial powers. As the dissent noted, "our interpretation of the CRA ought to elevate the will of Congress over that of an administrative agency. It is our elected representatives, not unelected commissioners, whom the Constitution vests with legislative power." Slip Op. at 41 (Griffin, J., dissenting).

## CONCLUSION

The Court should grant the petition for rehearing *en banc*.

October 6, 2025

Respectfully submitted,

/s/ James R. Wedeking
Michael B. Buschbacher
James R. Wedeking
BOYDEN GRAY PLLC
800 Connecticut Avenue, NW
Suite 900
Washington, DC 20006
(202) 955-6000
mbuschbacher@boydengray.com
jwedeking@boydengray.com

Counsel for *Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

I certify that this brief complies with the type-volume limits of Federal Rule of Appellate Procedure 29(a)(5) because it contains 2,566 words, excluding those parts exempted by Federal Rule of Appellate Procedure 32(f) and Sixth Circuit Rule 32(b)(1). I also certify that this brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it uses 14-point Century Schoolbook font.

<u>/s/ James R. Wedeking</u>

James R. Wedeking

October 6, 2025

## CERTIFICATE OF SERVICE

I certify that on October 6, 2025, I filed a copy of this brief with the Clerk of the Court for the Sixth Circuit Court of Appeals through the Court's CM/ECF system, which will serve counsel of record for all parties.

/s/ James R. Wedeking

James R. Wedeking