# In the United States Court of Appeals for the Sixth Circuit

---

OHIO TELECOM ASSOCIATION; TEXAS ASSOCIATION OF BUSINESS; CTIA – THE WIRELESS ASSOCIATION; NCTA – THE INTERNET & TELEVISION ASSOCIATION; USTELCOM – THE BROADBAND ASSOCIATION,

*Petitioners,*

HAMILTON RELAY, INC.,

*Intervenor,*

v.

FEDERAL COMMUNICATIONS COMMISSION; UNITED STATES OF AMERICA,

*Respondents.*

---

On Petition for Rehearing En Banc of Review of an Order of the Federal Communications Commission

---

## *AMICUS CURIAE* BRIEF OF MICHAEL A. FRAGOSO IN SUPPORT OF PETITION FOR REHEARING EN BANC

---

Cody L. Reaves*
Matt J. Bendisz
Peter Lee Hamilton
TORRIDON LAW PLLC
801 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Tel: (202) 249-6900
creaves@torridonlaw.com
*Counsel of Record*

*Counsel for Amicus Curiae*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................iii

INTEREST OF *AMICUS CURIAE* .......................................................... 1

INTRODUCTION AND SUMMARY OF ARGUMENT ......................... 3

ARGUMENT ..................................................................................... 5

    I.    The Congressional Review Act's Preemption Provisions Must Include Individual Components Of The Repealed Rule. .................................................................................... 5

    II.    Under Senate Rules, S.J. Res. 34 Could Not Have Been Drafted Differently To Specify Breach Notification. .............. 6

    III.    S.J. Res. 34 Was Intended To Include The Breach Notification Provisions Of The Privacy Rule......................... 9

    IV.    En Banc Review Is Appropriate In This Case...................... 13

CONCLUSION ................................................................................ 15

CERTIFICATE OF COMPLIANCE........................................................ 16

CERTIFICATE OF SERVICE............................................................... 17

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Ohio Telecom Ass'n v. FCC*, Nos. 24-3133/3206/3252,
2025 WL 2331753, (6th Cir. Aug. 13, 2025)............................................7

*W. Union Tel. Co. v. Kansas ex rel. Coleman*, 216 U.S. 1 (1910)..............5

**Statutes**

5 U.S.C. § 801 *et seq.* .......................................................................3

5 U.S.C. § 801(b)(2) .......................................................................5, 6

5 U.S.C. § 802(a)..............................................................................7

5 U.S.C. § 802(d)..............................................................................7

5 U.S.C. § 802(d)(2) ..........................................................................8

S.J. Res. 34, 115th Cong. (2017). ................................................. *passim*

**Other Authorities**

163 CONG. REC. S1927 (Mar. 22, 2017) ..................................................14

163 CONG. REC. S1947 (Mar. 23, 2017) ..................................................14

"Data Breach Reporting Requirements," 89 Fed. Reg. 9968 (Feb. 12,
2024). ........................................................................................4

Edith Ramirez & Maureen Ohlhausen, *Responses to Questions for
the Record from Sen. Orrin G. Hatch*, *available at* https://
www.judiciary.senate.gov/imo/media/doc/Ohlhausen%
20Responses%20to%20QFRs1.pdf. ..................................................11

*How Will the FCC's Proposed Privacy Regulations Affect Consumers
and Competition?*: Hearing Before the S. Comm. on Com., Sci., &
Transp., 114th Cong. (2016), *available at*

https://www.commerce.senate.gov/2016/7/how-will-the-fcc-s-proposed-privacy-regulations-affect-consumers-and-competition ......12

Letter from Michael Dabbs, Dir. of Legis. Affs., FCC, to Charles E. Grassley, Chairman, Comm. on the Judiciary, U.S. Senate (June 29, 2016), *available at* https://www.judiciary.senate.gov/imo/media/doc/Wheeler%20Responses%20to%20QFRs.pdf. ......................11

Martin B. Gold, Senate Practice and Procedure (2018). .........................8

"Protecting the Privacy of Customers of Broadband and Other Telecommunications Services," 81 Fed. Reg. 87274 (Dec. 2, 2016).......3

# INTEREST OF *AMICUS CURIAE*[1]

*Amicus Curiae*, Michael A. Fragoso, is a partner at Torridon Law PLLC. For nearly a decade, he served as a senior staff member in the U.S. Senate, ultimately serving as chief counsel to the Senate Republican Leader, Mitch McConnell (R-Kentucky), from 2021 until 2025.

From August 2015 until February 2018, *amicus* was counsel and later chief counsel to the Senate Judiciary Committee's Subcommittee on Privacy, Technology, and the Law (Privacy Subcommittee) under the leadership of then-Chairman Jeff Flake (R-Arizona). Chairman Flake was the sponsor of S.J. Res. 34, the congressional resolution of disapproval of the Federal Communications Commission (FCC)'s Privacy Rule, "Protecting the Privacy of Customers of Broadband and Other Telecommunications Services," 81 Fed. Reg. 87274 (Dec. 2, 2016). Chairman Flake introduced S.J. Res. 34 following over a year of oversight by the Privacy Subcommittee regarding the proposed FCC rulemaking.

---

[1] No party's counsel authored the brief in whole or part. No party or party's counsel contributed money intended to fund preparing or submitting the brief. No person other than *amicus* or his counsel contributed money intended to fund preparing or submitting the brief.

As chief counsel to Chairman Flake and the Privacy Subcommittee, *amicus* was responsible both for drafting the resolution of disapproval itself and managing the process of its eventual enactment. He had previously orchestrated the Privacy Subcommittee's oversight of the FCC's activity, including comments on the proposed rulemaking, oversight letters to then-Chairman Tom Wheeler, and an oversight hearing of both the FCC and Federal Trade Commission (FTC). Because of these experiences, *amicus* has unique knowledge about the drafting and passage of S.J. Res. 34, which bears directly on the majority opinion's assertions about its drafting and legislative history.

<u>**INTRODUCTION AND SUMMARY OF ARGUMENT**</u>

The decision of the panel in this case functionally eliminates a core provision of the Congressional Review Act (CRA). 5 U.S.C. § 801 *et seq.* In 2017, Congress passed and President Trump signed into law S.J. Res. 34,[2] a resolution of disapproval under the CRA that repealed the 2016 FCC Rule "Protecting the Privacy of Customers of Broadband and Other Telecommunications Services" (Privacy Rule).[3] One of the Privacy Rule's many provisions that Congress repealed imposed new breach-notification requirements on Internet service providers. Even though a CRA resolution of disapproval prevents an agency from issuing regulations that are "substantially the same" as those that were disapproved, the FCC nevertheless promulgated a Rule on "Data Breach Reporting Requirements" (Data Breach Rule) in early 2024.[4] This litigation followed, and a divided panel of this court concluded that S.J. Res. 34 did not preempt the Data Breach Rule.

---

[2] S.J. Res. 34, 115th Cong. (2017).

[3] "Protecting the Privacy of Customers of Broadband and Other Telecommunications Services," 81 Fed. Reg. 87274 (Dec. 2, 2016).

[4] *See* "Data Breach Reporting Requirements," 89 Fed. Reg. 9968 (Feb. 12, 2024).

If agencies are allowed to strip rules that were repealed under the CRA for their parts and then turn those into new, freestanding rules, it would functionally eliminate Congress's ability to preempt future rules under the statute. This is wrong because preemption is a key part of the text and purpose of the statute.

Contrary to the panel's assertions, there was no way for Congress to draft this CRA resolution differently to specify that, in repealing the Privacy Rule, it was specifically including the breach-notification requirements. Both the terms of the CRA and the precedents of the Senate are highly prescriptive as to the language of CRA resolutions, and the language used in S.J. Res. 34 was drafted to comply with those prescriptions.

So too, the legislative history shows that, in repealing the Privacy Rule through S.J. Res. 34, Congress intended to include the breach-notification requirements. The requirements featured in Senate oversight of the Privacy Rule, were part of the Republican whipping efforts to bring the resolution to the Senate Floor, and were acknowledged by the resolution's opponents as being on the chopping block if S.J. Res. 34 were to be adopted.

Given the nature of the CRA and the course of its litigation, this Court should rehear this case en banc and correct the egregious errors of the panel decision. Otherwise, in the years it will take for similar CRA opinions to percolate, Congress and the Executive Branch will comply with the flawed analysis of the panel decision, doing significant damage to the operation of the CRA.

## ARGUMENT

### I. The Congressional Review Act's Preemption Provisions Must Include Individual Components Of The Repealed Rule.

When Congress exercises its authority under the Congressional Review Act, it does not just repeal the agency action in question—it also forbids an action in the future that is "substantially the same." 5 U.S.C. § 801(b)(2). Its clear textual prohibition would be a dead letter if future agencies were able to carve up a repealed rule and enact it again piece by piece. *See W. Union Tel. Co. v. Kansas ex rel. Coleman*, 216 U.S. 1, 53 (1910) (Holmes, J., dissenting) ("Even in the law the whole generally includes its parts.").

The CRA is clear that its effects are preemptive. As the statute states, a rule that is repealed under the CRA "may not be reissued in

substantially the same form." 5 U.S.C. § 801(b)(2). The CRA further specifies that, in order for a rule that is "substantially the same" to be issued, it must be "specifically authorized by a law enacted after the date of the joint resolution disapproving the original rule." *Id.*

The effect of a CRA resolution of disapproval is to clear the field of an impermissible action unless or until Congress indicates that the law allows that action. This is reflected in the CRA's provision that separate, post-rule legislation is necessary to allow a rule that is substantially the same to issue. *Id.*

This effect would not be possible if the CRA allowed agencies to re-enact repealed rules in piecemeal fashion. Any rule that includes multiple provisions could simply be re-enacted provision by provision in order to circumvent Congress's action. Indeed, that is precisely what happened here with the breach-notification requirements.

## II. Under Senate Rules, S.J. Res. 34 Could Not Have Been Drafted Differently To Specify Breach Notification.

S.J. Res. 34 was drafted as the CRA requires. The language of CRA resolutions is both prescribed by statute and circumscribed by precedent. Under Senate Rules, Congress had no other way to draft S.J. Res. 34 to

further specify that the breach-notification provision would also be included.

A panel of this Court disagreed. "If Congress intended to prohibit an agency from issuing a new rule that is substantially the same as any part of a prior rule nullified by a disapproval resolution, it could have said so. That is not the language it chose." *Ohio Telecom Ass'n v. FCC*, Nos. 24-3133/3206/3252, 2025 WL 2331753, at *20 (6th Cir. Aug. 13, 2025). But that is simply incorrect. To repeal the Privacy Rule, including the breach-notification requirement, Congress chose the language required by the CRA: "That Congress disapproves the rule submitted by the _____ relating to _____, and such rule shall have no force or effect." 5 U.S.C. § 802(a).

CRA resolutions are "privileged." That is, they are subject to a special expedited procedure adopted by statute. *See* Martin B. Gold, Senate Practice and Procedure 5 (2018) ("Gold"). A resolution can receive the benefit of this expedited procedure only if the statutory forms are met. That is why Congress had no choice but to use the language of the statute

in repealing the Privacy Rule. To do otherwise would have risked exceeding the statutory prescriptions of the CRA and subjecting the resolution of disapproval to a filibuster.

Further means of specification were also unavailable. Under both the statute and Senate precedents, there is no ability to amend a CRA resolution of disapproval. Under the terms of the CRA, resolutions of disapproval are not subject to amendment. 5 U.S.C. § 802(d). This means that the only way the Senate could amend a resolution of disapproval is through a contrary precedent. *See* Gold at 2 (explaining that expedited-procedure laws and precedents are "on equal footing" in terms of establishing Senate procedure). Doing so, however, would open up *all CRA resolutions going forward* to amendment, thereby converting any CRA resolution into a potential "vote-a-rama." *See id.* at 154 (explaining how an analogous situation works under the Budget Act). This would effectively nullify the CRA as an instrument of policy by replacing its statutory limit of ten hours of debate, 5 U.S.C. § 802(d)(2), into a potential multi-day amendment exercise.

Thus, there is not now—nor was there in 2017—precedent supporting the further clarification of a CRA resolution beyond the terms prescribed by statute. Contrary to the panel opinion's assertion that "Congress can resolve this concern by passing resolutions with specific language," when Congress passed S.J. Res. 34, that is precisely what it did.

## III.  S.J. Res. 34 Was Intended To Include The Breach Notification Provisions Of The Privacy Rule.

The resolution disapproving of the Privacy Rule was intended to encompass the breach-notification requirement as part of that Rule. The breach-notification requirements were an important part of the legislative history of S.J. Res. 34, featuring in the oversight activities of the FCC's Privacy Rule by both the Privacy Subcommittee and the Senate Commerce Committee, as well as being acknowledged by the resolution's opponents.

The Privacy Subcommittee undertook extensive oversight of the FCC's Privacy Rule in the year leading up to the passage of S.J. Res. 34. Part of that oversight was a subcommittee hearing on May 11, 2016, that included then-FCC Chairman Tom Wheeler, then-FCC Commissioner Ajit Pai, then-FTC Chairwoman Edith Ramirez, and then-FTC Commissioner Maureen Ohlhausen. Following that hearing, Senators sent the

agency chairs written oversight questions, which included questions about the breach-notification requirement of the contemplated rulemaking. For example, Chairman Flake asked Chairman Wheeler:

> The NPRM includes a breach notification requirement. Currently 47 States have breach notification requirements.
>
> a. Before proposing these requirements did the FCC undertake a federalism summary impact statement as encouraged by Section 9 of Executive Order 13,132, "Federalism"?
>
> b. If not, does the FCC intend to undertake a federalism summary impact statement before issuing its final rule? If not, why not?[5]

Senator Orrin Hatch (R-Utah) asked Chairwoman Ramirez and Commissioner Ohlhaussen, "Does the FTC believe that there is a need for a new and separate data security and breach notification regime enforced by the FCC?"[6]

---

[5] Letter from Michael Dabbs, Dir. of Legis. Affs., FCC, to Charles E. Grassley, Chairman, Comm. on the Judiciary, U.S. Senate (June 29, 2016), *available at* https://www.judiciary.senate.gov/imo/media/doc/Wheeler%20Responses%20to%20QFRs.pdf.

[6] Edith Ramirez & Maureen Ohlhausen, *Responses to Questions for the Record from Sen. Orrin G. Hatch, available at* https://www.judiciary.senate.gov/imo/media/doc/Ohlhausen%20Responses%20to%20QFRs1.pdf.

Similarly, the Senate Committee on Commerce, Science, and Transportation followed the Privacy Subcommittee's lead and held a hearing on the proposed privacy rules on July 12, 2016.[7] The breach-notification requirements featured strongly in that hearing: they were raised by former FTC Chairman John Leibowitz,[8] by Dean Garfield,[9] the president of the Internet Technology Industry Council, and by the American Cable Association president, Matthew Polka.[10]

[7] *How Will the FCC's Proposed Privacy Regulations Affect Consumers and Competition?*: *Hearing Before the S. Comm. on Com., Sci., & Transp.*, 114th Cong. (2016), *available at* https://www.commerce.senate.gov/2016/7/how-will-the-fcc-s-proposed-privacy-regulations-affect-consumers-and-competition.

[8] *How Will the FCC's Proposed Privacy Regulations Affect Consumers and Competition?*: *Hearing Before the S. Comm. on Com., Sci., & Transp.*, 114th Cong. 7 (2016) (statement of Jon Leibowitz), https://www.commerce.senate.gov/services/files/1E2F88B1-0D9E-4120-825E-0B7B8E41AC16.

[9] *How Will the FCC's Proposed Privacy Regulations Affect Consumers and Competition?*: *Hearing Before the S. Comm. on Com., Sci., & Transp.*, 114th Cong. 4, 8–9 (2016) (statement of Dean C. Garfield), https://www.commerce.senate.gov/services/files/D7E4DBBF-16C7-43B5-A6B3-327CCF52E1FF.

[10] *How Will the FCC's Proposed Privacy Regulations Affect Consumers and Competition?*: *Hearing Before the S. Comm. on Com., Sci., & Transp.*, 114th Cong. 4, 9–14 (2016) (statement of Matthew M. Polka), https://www.commerce.senate.gov/services/files/B44F7822-D2E7-4084-8BDC-4DE871E8FCFB.

The resolution was the object of extensive lobbying efforts on both sides, and the breach-notification requirements were an important part of the efforts to "whip" support for S.J. Res. 34. Its supporters privately used each argument at their disposal to generate sufficient support for the resolution, and the unworkability and confusion of conflicting state and federal breach-notification rules was a recurring argument that contributed to its adoption.

The opponents of S.J. Res. 34, furthermore, knew that it would apply to the Privacy Rule's breach-notification requirements. The then-Ranking Member of the Senate Commerce Committee, Bill Nelson (D-Florida), said during debate on the resolution:

> [ISPs] must also comply with specific breach notifications. In other words, if somebody has busted the internet and stolen all of this information from the site, don't you think you ought to be notified that your personal information was hacked? Well, that is one of the requirements.
>
> So then I ask my colleagues: What in the world is wrong with requiring broadband providers to give their paying customers clear, understandable, and accurate information about what confidential and potentially highly personal information those companies collect?

163 CONG. REC. S1927 (Mar. 22, 2017) (statement of Sen. Nelson). The next day, Senator Ed Markey (D-Massachusetts) argued:

12

> The Republicans are trying to rescind the Federal Communications Commission's broadband privacy rules, which simply require your cable, wireless, or telephone company provider to obtain consumer consent before using or sharing subscribers' personal information; promote transparency by disclosing what they collect about internet and wireless users; and adopt data security protections *and notify consumers if a breach occurs.*

163 CONG. REC. S1947 (Mar. 23, 2017) (statement of Sen. Markey) (emphasis added). The history, like the text, could not be clearer: the CRA resolution includes the breach-notification requirements.

## IV.  En Banc Review Is Appropriate In This Case.

The extent of CRA preemption is an important legal question that the panel here got wrong. There have been 36 successful resolutions of disapproval under the CRA, all of which would be rendered toothless were the panel opinion here allowed to stand. Given the nature of the CRA, it would likely take years for a circuit split to emerge on the question of CRA preemption, making it all the more important that this Court get it right, even though that requires going en banc.

The course of this case shows the standard dynamic in which CRA preemption operates. Here, the FCC issued the Privacy Rule in late 2016 under President Obama. Congress disapproved it in early 2017 under President Trump. Nearly seven years later, the Data Breach Rule was

promulgated under President Biden, and this litigation ensued. Because CRA resolutions are signed by the president, it is extraordinarily unlikely that a president who signed a CRA resolution would then turn around and issue a substantially similar rule. Thus, any litigation over CRA preemption is typically delayed until there is a different occupant in the White House.

Given all this, it can take quite some time for preemption litigation to move forward. In the meantime, the flawed panel decision will be the governing circuit precedent on point, confusing Congress as it enacts further resolutions of disapproval, as well as executive agencies as they navigate the parameters of substantial similarity.

## CONCLUSION

The Court should grant en banc review and reverse the panel's decision.

October 6, 2025

Respectfully submitted,

/s/ *Cody L. Reaves*

Cody L. Reaves\*
Matt J. Bendisz
Peter Lee Hamilton
TORRIDON LAW PLLC
801 17th Street, N.W., Suite 1100
Washington, D.C. 20006
Tel: (202) 249-6900
creaves@torridonlaw.com
mbendisz@torridonlaw.com
phamilton@torridonlaw.com
\**Counsel of Record*

*Counsel for Amicus Curiae*

# CERTIFICATE OF COMPLIANCE

This Brief complies with the type-volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B) and Circuit Rule 29(b)(4) because it contains 2,512 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f) and Circuit Rule 32(b)(1).

This Brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)–(6) because it has been prepared in a proportionally spaced typeface using the Microsoft Word 2016 word processing system in 14-point Century Schoolbook font.

/s/ *Cody L. Reaves*
Cody L. Reaves

## CERTIFICATE OF SERVICE

I hereby certify that I caused the foregoing to be electronically filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit by using the appellate CM/ECF system on October 6, 2025. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

/s/ *Cody L. Reaves*
Cody L. Reaves