Nos. 24-3133, 24-3206, 24-3252

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

OHIO TELECOM ASSOCIATION, TEXAS ASSOICATION OF BUSINESS, CTIA–THE WIRLESS ASSOICATION, NCTA–THE INTERNET & TELEVISION ASSOCIATION, and USTELECOM–THE BROADBAND ASSOCIATION,

*Petitioners,*

HAMILTON RELAY, INC.,

*Intervenor,*

v.

FEDERAL COMMUNICATIONS COMMISSION, UNITED STATES OF AMERICA,

*Respondents.*

On Petition for Review from the Federal Communications Commission

**BRIEF OF IOWA AND 20 ADDITIONAL STATES SUPPORTING PETITIONERS**

BRENNA BIRD
Attorney General of Iowa

ERIC WESSAN
Solicitor General
1305 E. Walnut Street
Des Moines, Iowa 50319
(515) 281-5164
(515) 281-4209 (fax)
eric.wessan@ag.iowa.gov

September 8, 2026

*Counsel for Amicus Iowa Attorney General's Office*
*(Additional counsel listed after signature block)*

# TABLE OF CONTENTS

TABLE OF CONTENTS ........ i
TABLE OF AUTHORITIES ........ ii
STATEMENT OF AMICUS CURIAE ........ 1
SUMMARY OF ARGUMENT ........ 4
ARGUMENT ........ 4
I. The Congressional Review Act Bars FCC's 2024 Order Because it is "Substantially the Same" as the 2016 Order. ........ 4
II. Piecemealing Disapproved Rules Forces States to Bear the Costs of Regulations Congress Has Rejected. ........ 12
CONCLUSION ........ 14
ADDITIONAL COUNSEL ........ 16
CERTIFICATE OF COMPLIANCE ........ 17
CERTIFICATE OF SERVICE ........ 17

# TABLE OF AUTHORITIES

Cases

*Citizens for Const. Integrity v. United States*,
57 F.4th 750 (10th Cir. 2023) .......... 6, 7
*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) .......... 13
*Ohio Telecom Ass'n v. FCC*,
150 F.4th 694 (6th Cir. 2025) .......... 3, 10
*Sheffield v. City of Fort Thomas, Ky.*,
620 F.3d 596 (6th Cir. 2010) .......... 13

Statutes

5 U.S.C. § 551(4) .......... 6
5 U.S.C. § 801 .......... 2, 5, 6, 7, 11, 12
5 U.S.C. § 802(d) .......... 6
5 U.S.C. § 804(3) .......... 6
47 U.S.C. § 222 .......... 1, 11

Regulations

Data Breach Reporting Requirements,
89 Fed. Reg. 9968 (2024) .......... 3
Implementation of the Telecommunications Act of 1996,
13 FCC Rcd. 8061 (1998) .......... 1
Protecting the Privacy of Customers of Broadband & Other Telecommunications Services,
31 FCC Rcd. 13911 (2016) .......... 2, 8

## STATEMENT OF AMICUS CURIAE

What Congress gives, Congress may take away. Congress tasked the Federal Communications Commission ("FCC") with ensuring that telecommunication carriers are protecting the privacy of customer information. *See* Telecommunications Act of 1996, Pub. L. No. 104-104, 110 Stat. 56; 47 U.S.C. § 222. Congress set out specific requirements on the type of information FCC must protect. For example, FCC is to ensure that carriers protect the confidentiality of customer proprietary network information ("CPNI")—data about a consumer's telephone service including times, dates, duration, receiver of calls, a consumer's network they subscribe to, and information found on one's telephone bill. 47 U.S.C. § 222(h)(1). And Congress limited carriers on how and when they can use CPNI. *Id.* § 222(c).

In 1998, FCC issued its first rule under the authority Congress granted to it in section 222. *See* Implementation of the Telecommunications Act of 1996, 13 FCC Rcd. 8061 (1998). And FCC has continued to issue rules under that authority over the last several decades. In 2016, FCC issued an omnibus Broadband Privacy Order that sought to "apply the privacy requirements of the Communications Act of

1934 . . . [to] broadband Internet access service." *See* Protecting the Privacy of Customers of Broadband & Other Telecommunications Services, 31 FCC Rcd. 13911, 13912 (2016) ("2016 Order").

FCC's order covered CPNI data and another category of customer data—personally identifiable information ("PII"). *Id.* at 13928. The order defined PII as "any information that is linked or reasonably linkable to an individual or device," including a person's name, email, birthdate, or Social Security number. *Id.* at 13944, 13946, 14081. As relevant here, the order amended FCC's data breach requirements to apply prospectively to breaches of CPNI and PII. *Id.* at 14085–86.

FCC submitted the order to Congress for its review under the Congressional Review Act ("CRA"), a decades-old mechanism by which Congress can hold accountable the executive agencies it creates. Congress disapproved of the order under the CRA. *See* Pub. L. No. 115-22, 131 Stat. 88 (2017) ("2017 Disapproval"). Then the President signed the disapproval resolution. *See id.* And when Congress passes, and the President signs, a "joint resolution" of disapproval, then the rule "shall not . . . continue," and "may not be reissued in substantially the same form." 5 U.S.C. § 801(b). So FCC rescinded the 2016 order.

Years later, in February 2024, FCC issued a new order specifically dealing with data breach reporting requirements. *See* Data Breach Reporting Requirements, 89 Fed. Reg. 9968 (2024) ("2024 Order"). FCC again said data breach notification requirements cover both CPNI and PII. *See id.* at 9968. In other words, the 2024 order reenacts one part of the 2016 order that Congress disapproved. FCC claims that despite the 2024 order reenacting part of the 2016 order, that the two were not "substantially the same." *Id.* at 9993. A panel of this Court agreed, over dissent. *See Ohio Telecom Ass'n v. FCC*, 150 F.4th 694, 724 (6th Cir. 2025). But this Court voted for rehearing en banc. *See Ohio Telecom Ass'n v. FCC*, 2026 WL 2209992, at *1 (6th Cir. July 31, 2026).

The undersigned amici curiae are 20 Attorneys General. Across the United States, States have challenged agency rules that should have been foreclosed from reenactment by the Congressional Review Act. States have an interest in ensuring that the limits the CRA imposes are followed by agencies and applied by the courts. And here, that is why the Amici States support granting the petition for review and vacating the 2024 Order. The 2024 order is substantially like the rescinded 2016 order for purposes of the CRA. Agencies cannot circumvent the CRA by

reimposing rules, piecemeal, when the political branches have already disapproved.

This Court should grant the petition for review and vacate the 2024 Order because the Order reissues, in substantially the same form, a rule Congress disapproved under the CRA.

## SUMMARY OF ARGUMENT

1. The Congressional Review Act forbids agencies from reenacting rules after Congress disapproved of those rules if they are "substantially the same." FCC's 2024 order is "substantially the same" as FCC's 2016 order that Congress disapproved. Thus, the 2024 order is unlawful. This Court should grant the petition for review and vacate the 2024 order because the Congressional Review Act requires it.

2. Allowing agencies to evade the Congressional Review Act by piecemealing rules disapproved by Congress would leave States subject to regulatory obligations that Congress has affirmatively rejected. States would then have little choice but to expend substantial resources litigating each rule to enforce Congress's prior disapproval. The Congressional Review Act should not be interpreted to impose that burden on States.

## ARGUMENT

### I. The Congressional Review Act Bars FCC's 2024 Order Because it is "Substantially the Same" as the 2016 Order.

FCC's 2016 order, since rescinded by Congress and the President, comprised several parts. Congress and the President's CRA disapproval of the order disapproved of the whole order, including each constituent

part. In doing so, Congress and the President removed the agency's delegated authority to enact that rule in any substantially similar way, in whole or in part. Yet in 2024, FCC reenacted one part of the 2016 disapproved rule, with only minor, technical differences. The 2024 rule is substantially the same as its coordinate part in the 2016 disapproved rule. The CRA thus blocks the 2024 rule.

Allowing an agency to re-enact a disapproved rule so long as it does so in parts, threatens to swallow the CRA's democratic check on agency action.

1. The CRA establishes an expedited legislative procedure for Congress to review, and ultimately disapprove, rules issued by federal agencies. Pub. L. No. 104-121, § 251, 110 Stat. 847, 868–74 (1996) (codified as 5 U.S.C. §§ 801–808). The CRA requires federal agencies to "submit to each House of the Congress and to the Comptroller General" each rule it promulgates, along with a report that includes "a concise general statement relating to the rule." *Id.* § 801(a)(1)(A). Once Congress receives the rule, it generally has sixty days to introduce a joint resolution if it wishes to disapprove of it. *Id.* § 802(a).

If Congress passes, and the President signs, a "joint resolution of disapproval" of an agency's rule, then the rule "shall not take effect (or continue)," and the rule "may not be reissued in substantially the same form" unless "specifically authorized by a law enacted after the date of the joint resolution." 5 U.S.C. § 801(b). The joint resolution is federal law, enacted in accordance with the constitutional requirements of bicameralism and presentment. *See*, *e.g.*, *Citizens for Const. Integrity v. United States*, 57 F.4th 750, 763–64 (10th Cir. 2023). One feature of the CRA is that joint resolutions are put on a legislative fast track that is exempt from the Senate's ordinary filibuster rule and that limits the motions that Senators raise. 5 U.S.C. § 802(d).

When Congress disapproves of an agency order, it disapproves of each of that order's parts. Indeed, for purposes of the CRA, Congress defines a "rule" as "the whole *or a part of* an agency statement of general or particular applicability and future effect designed to implement, interpret, or prescribe law or policy." 5 U.S.C. § 551(4) (emphasis added); *see* 5 U.S.C. § 804(3). So when Congress disapproves of a rule, it similarly disapproves of "the whole or [] part of" that rule. 5 U.S.C. § 551(4).

It is illogical to conclude that, when Congress rejects a rule with multiple parts, the agency remains free to reissue those very same parts, whether together or separately, without Congressional approval. Indeed, if Congress wants an agency to reinstate a rule, "it can simply pass a law saying so." *Citizens for Const. Integrity*, 57 F.4th at 765. Allowing an agency to reissue parts of a disapproved rule would contravene both the CRA's text and its purpose. The CRA provides that a rule disapproved by Congress "shall have no force or effect." 5 U.S.C. § 801(b). Yet permitting an agency to reissue the substance of a disapproved rule as a whole or in part would allow the agency to give effect to rules that Congress has expressly rejected.

Further, the CRA states that unless there has been approval, the rule "may not be reissued in substantially the same form." 5 U.S.C. § 801(b). The text does not say "exactly the same form" and to require that all the parts of a rule be included in a subsequent rule replaces the word "substantially" with "identically." *See* Eric Wessan, *Congressional Review Act(ion) After Loper Bright,* Yale J. on Reg.: Notice & Comment (Oct. 17, 2025), https://perma.cc/866C-J67B.

Finally, the purpose of the CRA is for Congress to have "a tool [it] can use to overturn certain federal agency actions." Maeve P. Carey & Christopher M. Davis, Cong. Rsch. Serv., IF10023, The Congressional Review Act (CRA): A Brief Overview 1 (2024). If agencies can re-enact a disapproved rule so long as it does so part by part, the purpose of the CRA is void.

2. In 2016, FCC promulgated an order titled Protecting the Privacy of Customers of Broadband and other Telecommunications Services. *See* 2016 Order, 31 FCC Rcd. 13911. The order imposed data privacy and security requirements on different types of communication service providers. *See id.* at 13912. The order listed its scope of coverage concerning what communication providers the rules applied to and what customer information was protected under the order. *Id.* at 13924–56, 14080. Importantly, FCC defined the information covered as "customer proprietary information." *Id.* at 13941, 14080. Customer propriety information included CPNI and PII. *Id.* at 13942, 14081. The order broadly defined PII as "any information that is linked or reasonably linkable to an individual or device," including a person's name, email, birthdate, or Social Security number. *Id.* at 13944, 13946, 14081.

The order went on to describe notice requirements of privacy policies for carriers to inform customers. *Id.* at 14081–82. Next, it laid out how carriers are to obtain opt-in and opt-out approval from customers on the sharing of their information. *Id.* at 14083–84. And it explained the factors that carriers must consider in implementing security measures. *Id.* at 14084–85. The order then explained that data breach notification requirements now applied to CPNI and PII. *Id.* at 14085–86. And it addressed how carriers could use different security regimes, how to obtain waiver of privacy rights, and how the rules affected state law. *Id.* at 14086–87.

Congress responded to FCC's 2016 omnibus order with disapproval under the CRA. *See* 2017 Disapproval. And for good reason: The order imposed regulations on a wide array of consumer data, going beyond the authority Congress had delegated FCC. So Congress disapproved of the 2016 order to ensure that FCC was exercising only its delegated authority—establishing duties to protect the confidentiality of CPNI data—and not going beyond its authority to establish requirements for other types of customer data.

Eight years later, FCC decided to try again and adopted a new order titled Data Breach Reporting Requirements. That 2024 order and the 2016 order have many similarities—they have the same scope, essentially the same definition of breach, the same state of mind requirement for breach, the same agencies that must be notified, and the same timeline for customer notification. *See* 2024 Order at 9968, 10002–03; 2016 Order at 13928, 14080, 14085–86; *Ohio Telecom Ass'n*, 150 F.4th at 727 (Griffin, J., dissenting) (provides a table that "helps to visualize just how similar these rules are").

There are "minor, technical differences" between the two orders but none of those distinctions relate to the "nearly identical regimes for reporting breaches of customer PII." *Ohio Telecom Ass'n*, 150 F.4th at 727 (Griffin, J., dissenting). The two rules have the same definition of protected data, both including CPNI and PII. *Compare* 2024 Order at 10003 *with* 2016 Order at 14080. And the difference between CPNI and PII are significant. While CPNI refers to a limited and narrow category of customer information, PII, as defined in both the 2016 and 2024 orders, encompasses a much broader range of customer information. *See* 2016 Order at 14081; 2024 Order at 10003. By including PII in its definition,

FCC dramatically enlarged the scope of carriers' data-breach reporting obligations. And that expansion goes beyond what Congress authorized FCC to protect—CPNI data. 47 U.S.C. § 222(h)(1).

That the two rules have minor, technical differences does not alter the CRA's effect. Indeed, CRA disapproval does not block only later-enacted identical rules; it blocks later-enacted rules that are "substantially the same." 5 U.S.C. § 801(b)(2). And because the 2024 rule is substantially the same as the relevant part of the 2016 rule, the 2024 rule should be voided.

Any other conclusion would arm administrative agencies with a weapon to circumvent Congress's check on agencies under the CRA. One way to wield that weapon would be to break a disapproved order into separate pieces and reissue those pieces individually as FCC did here. A rule that Congress disapproved of in its entirety could thus be repromulgated one piece at a time, rendering the CRA's prohibition on rules that are "substantially the same" largely meaningless.

Congress did not enact the CRA to permit that result. When Congress disapproved the 2016 Order, the resolution stated, "Congress disapproves the rule submitted by the Federal Communications

Commission . . . and such rule shall have no force or effect." 2017 Disapproval. That disapproved rule contained a part requiring carriers to report any data breaches involving PII. 2016 Order at 14085–86. Allowing FCC to reissue that requirement merely because it separated it from the other provisions of the 2016 Order would elevate form over substance and allow an agency to accomplish what Congress expressly prohibited.

The CRA's text forecloses that result. Congress prohibited an agency from reissuing a disapproved rule in "substantially the same" form, not merely from reenacting the rule word-for-word. 5 U.S.C. § 801(b)(2). The 2024 rule is substantially the same as the relevant portion of the disapproved 2016 rule. FCC should not be allowed to circumvent Congress's disapproval.

## II. Piecemealing Disapproved Rules Forces States to Bear the Costs of Regulations Congress Has Rejected.

Allowing an agency to reissue a rule piecemeal would put States in an untenable position. When Congress disapproves a rule under the CRA, the agency may not reissue that rule "in substantially the same form." 5 U.S.C. § 801(b)(2). If an agency could circumvent that prohibition by dividing the disapproved rule into separate components and reissuing

them individually, States could face the same regulatory obligations Congress affirmatively rejected, merely repackaged as separate rules. And States cannot reasonably be expected to return to Congress to obtain a second disapproval of each component. Nor can they simply disregard the agency's rules. *See Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 142 (1982) ("Federal regulations have no less pre-emptive effect than federal statutes. Where Congress has empowered an administrator to promulgate regulations, regulations intended to pre-empt state law have that effect unless the administrator exceeded his statutory authority or acted arbitrarily."); *Sheffield v. City of Fort Thomas, Ky.*, 620 F.3d 596, 610–11 (6th Cir. 2010) (acknowledging that principle).

States would then face a choice: either comply with the piecemeal rule or challenge each individually enacted rule in court, one after the other. And both options come with costs. So until a court determines such piecemeal rulemaking violates the CRA, States will bear costs imposed by regulatory requirements that Congress has already rejected. That could impose a substantial burden on States' resources.

The CRA gives Congress a way to prevent an agency from implementing a rule Congress disapproved. Allowing piecemeal

reissuance would shift to the States and the courts the burden of enforcing Congress's decision. That cannot be what Congress intended.

* * *

Congress passed the CRA with large bipartisan majorities and President Clinton signed it into law in 1996. For many reasons, the CRA is a tool that has almost exclusively been used after a change in presidential administration. No federal appeals court has authorized an agency to evade the CRA through piecemeal rulemaking. This Court should not be the first.

## CONCLUSION

The Court should grant the petition for review and hold that the Congressional Review Act precludes the FCC's 2024 order.

September 8, 2026

Respectfully submitted,

BRENNA BIRD
Iowa Attorney General

/s/ Eric Wessan
ERIC WESSAN
*Solicitor General*
Hoover State Office Building
1305 East Walnut Street
Des Moines, Iowa 50319
Phone: (515) 823-9117
eric.wessan@ag.iowa.gov

*Counsel for the State of Iowa*

## ADDITIONAL COUNSEL

Steve Marshall
Attorney General of Alabama

Cori Mills
Acting Attorney General of Alaska

Tim Griffin
Attorney General of Arkansas

James Uthmeier
Attorney General of Florida

Chris Carr
Attorney General of Georgia

Raúl R. Labrador
Attorney General of Idaho

Theodore E. Rokita
Attorney General of Indiana

Kris Kobach
Attorney General of Kansas

Rusell M. Coleman
Attorney General of Kentucky

Liz Murrill
Attorney General of Louisiana

Lynn Fitch
Attorney General of Mississippi

Catherine Hanaway
Attorney General of Missouri

Austin Knudsen
Attorney General of Montana

Michael T. Hilgers
Attorney General of Nebraska

Drew Wrigley
Attorney General of North Dakota

Alan Wilson
Attorney General of South Carolina

Marty Jackley
Attorney General of South Dakota

Jonathan Skrmetti
Attorney General of Tennessee

Ken Paxton
Attorney General of Texas

John B. McCuskey
Attorney General of West Virginia

## CERTIFICATE OF COMPLIANCE

I hereby certify that this brief complies with the type-volume limitation of Fed. R. App. P. 29(b)(4) because this brief contains 2,720 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f); *see* Fed. R. App. P. 40(d)(3)(A).

This brief also complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type-style requirements of Fed. R. App. P. 32(a)(5) because this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Century Schoolbook font.

Dated: September 8, 2026

/s/ *Eric H. Wessan*
Solicitor General

## CERTIFICATE OF SERVICE

The undersigned certifies that on the Eighth day of September, 2026, this brief was electronically filed with the Clerk of Court using the CM/ECF system, which will serve all counsel of record.

/s/ *Eric H. Wessan*
Solicitor General