Nos. 24-3133, 24-3206, 24-3252

IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

Ohio Telecom Association, et al.,

*Petitioners*,

Hamilton Relay, Inc.,

*Intervenor,*

v.

Federal Communications Commission, et al.,

*Respondents*.

On Petitions for Review of an Order of the
Federal Communications Commission, Agency No. 23-111

# BRIEF FOR PUBLIC CITIZEN AS AMICUS CURIAE IN SUPPORT OF RESPONDENTS AND DENIAL OF THE PETITIONS FOR REVIEW

Scott L. Nelson
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

October 7, 2026

*Attorneys for Amicus Curiae*
*Public Citizen*

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

# Disclosure of Corporate Affiliations and Financial Interest

Sixth Circuit
Case Number: 24-3133, -3206, -3252 Case Name: Ohio Telecom Ass'n v. FCC

Name of counsel: Scott L. Nelson

Pursuant to 6th Cir. R. 26.1, Public Citizen, Inc. (amicus curiae)
*Name of Party*
makes the following disclosure:

1. Is said party a subsidiary or affiliate of a publicly owned corporation? If Yes, list below the identity of the parent corporation or affiliate and the relationship between it and the named party:

No

2. Is there a publicly owned corporation, not a party to the appeal, that has a financial interest in the outcome? If yes, list the identity of such corporation and the nature of the financial interest:

No

CERTIFICATE OF SERVICE

I certify that on October 7, 2026 the foregoing document was served on all parties or their counsel of record through the CM/ECF system if they are registered users or, if they are not, by placing a true and correct copy in the United States mail, postage prepaid, to their address of record.

s/Scott L. Nelson
Public Citizen Litigation Group
1600 20th St. NW, Washington, DC

This statement is filed twice: when the appeal is initially opened and later, in the principal briefs, immediately preceding the table of contents. See 6th Cir. R. 26.1 on page 2 of this form.

## TABLE OF CONTENTS

**Page**

CORPORATE DISCLOSURE STATEMENT .......... i

TABLE OF AUTHORITIES .......... iii

INTEREST OF AMICUS CURIAE .......... 1

SUMMARY OF ARGUMENT .......... 1

ARGUMENT .......... 3

I. The words of the CRA do not bar new rules that are materially different in substance from disapproved rules. .......... 3

II. The established legal meaning of "substantially the same" reinforces its narrow scope. .......... 8

III. The CRA's structure and context support a narrow application of the bar on issuance of rules "substantially the same" as disapproved rules. .......... 10

CONCLUSION .......... 13

CERTIFICATE OF COMPLIANCE .......... 14

CERTIFICATE OF SERVICE .......... 15

## TABLE OF AUTHORITIES

**Cases** **Pages**


*Binno v. ABA*,
826 F.3d 338 (6th Cir. 2016) ........................................................3, 4

*Bowe v. United States*,
607 U.S. 13 (2026) ......................................................................13

*Food Marketing Institute v. Argus Leader Media*,
588 U.S. 427 (2019) ...................................................................3, 4

*Graver Tank & Manufacturing Co. v. Linde Air Products Co.*,
339 U.S. 605 (1950) ...................................................................8, 9

*POM Wonderful LLC v. Coca-Cola Co.*,
573 U.S. 102 (2014) ......................................................................4

*Robinson v. Shell Oil Co.*,
519 U.S. 337 (1997) ......................................................................4

*Stromback v. New Line Cinema*,
384 F.3d 283 (6th Cir. 2005) ...........................................................5

*Union Paper-Bag Machine Co. v. Murphy*,
97 U.S. 120 (1877) ....................................................................8, 9

*United States ex rel. Felten v. William Beaumont Hospital*,
993 F.3d 428 (6th Cir. 2021) ...........................................................4

*Warner-Jenkinson Co. v. Hilton Davis Chemical Co.*,
520 U.S. 17 (1997) ....................................................................8, 9

*Yates v. United States*,
574 U.S. 528 (2105) ......................................................................4

**Statutes**

5 U.S.C. § 801(b)(2) .......... 2

5 U.S.C. § 802(a) .......... 2

12 U.S.C. § 4225(d) .......... 6

31 U.S.C. § 1347 .......... 5

**Other Authorities**

AIPLA, *Model Patent Jury Instructions* (2025), https://www.aipla.org/home/news-publications/model-patent-jury-instructions .......... 9–10

*Black's Law Dictionary* (11th ed. 2019) .......... 4, 5, 6, 7

A. Scalia & B. Garner, *Reading Law* (2012) .......... 6

*Webster's Third New International Dictionary Unabridged* (2017) .......... 4, 5, 6, 7

## INTEREST OF AMICUS CURIAE[1]

Public Citizen is a nonprofit consumer advocacy organization with members in all 50 states. Public Citizen advocates before Congress, administrative agencies, and courts on many issues, including regulatory protections for consumers, workers, and the environment, and it often submits amicus briefs addressing administrative-law issues. The issue here—the scope of the Congressional Review Act (CRA) prohibition on new rules that are "substantially the same" as rules disapproved by Congress—may affect regulatory matters involving a broad range of Public Citizen's interests. Petitioners' reading of the CRA would bar agencies from issuing rules that are substantially *different* in substance from disapproved rules, thereby radically restricting agencies' ability to act within the scope of their delegated authority to protect the public.

## SUMMARY OF ARGUMENT

The Congressional Review Act provides for expedited procedures by which Congress may enact legislation in the form of a joint resolution

[1] Public Citizen has moved for leave to file this brief. It was not authored in whole or part by a party's counsel. No party or party's counsel contributed money intended to fund its preparation or submission. No person other than Public Citizen, its members, or its counsel contributed money intended to fund the brief's preparation or submission.

"disapprov[ing]" a newly promulgated agency rule and providing that the disapproved rule "shall have no force or effect." 5 U.S.C. § 802(a). Such legislation, if enacted, nullifies the entirety of the rule identified in the resolution. It also has the consequence of prohibiting the agency that promulgated the disapproved rule from reissuing the rule "in substantially the same form" or from issuing "a new rule that is substantially the same as" the disapproved rule, unless legislation subsequent to the disapproval resolution authorizes the agency to do so. *Id.* § 801(b)(2).

The statutory text, read in light of other statutory provisions, established legal meanings, and context, confirms that the CRA's prohibition on issuance of new rules that are "substantially the same" as rules disapproved by Congress does not apply to rules that are non-trivially *different* in substance from a disapproved rule.

## ARGUMENT

The CRA plainly prohibits an agency from issuing a new rule that is identical in substance to a rule disapproved under the CRA. Just as plainly, the CRA does not prohibit an agency from issuing a rule that is nontrivially *different* in substance from a disapproved rule.

The CRA does not prohibit agencies from promulgating rules that are merely "similar," or even "substantially similar" to rules that Congress disapproved. The phrase that defines the scope of the prohibition—"substantially the same"—describes not just a similarity or resemblance between two things, but functional *sameness* or identity. The qualifying adverb "substantially" means that an agency cannot use immaterial differences in wording or form to evade the statute by issuing a rule that, in substance, is the same as one Congress has disapproved. But if a new rule is non-trivially different in substance, it is not "substantially the same" and falls outside the statutory prohibition. This reading follows both from the common meaning of the critical words "same" and "substantially," and from decades of legal usage of the term "substantially the same" to refer to things that that law treats as being the same because the differences between them are immaterial.

## I. The words of the CRA do not bar new rules that are materially different in substance from disapproved rules.

The starting point, as always in matters of statutory construction, is the text Congress enacted. *Food Mktg. Inst. v. Argus Leader Media*, 588 U.S. 427, 436 (2019); *Binno v. ABA*, 826 F.3d 338, 346 (6th Cir. 2016). Interpreting statutory text requires consideration of the "ordinary

meaning" of the words used, *Food Mktg. Inst.*, 588 U.S. at 427; *Binno*, 826 F.3d at 346, their "specific context" within the structure of the statute, and "the broader context of the statute as a whole," *Yates v. United States*, 574 U.S. 528, 537 (2105) (*quoting Robinson v. Shell Oil Co.*, 519 U.S. 337, 341 (1997)); *United States ex rel. Felten v. William Beaumont Hosp.*, 993 F.3d 428, 431 (6th Cir. 2021). When such textual analysis reveals an unambiguous meaning, that meaning controls a statute's interpretation and application. *Binno*, 826 F.3d at 346 (citing *POM Wonderful LLC v. Coca-Cola Co.*, 573 U.S. 102, 112 (2014)).

The key words of the CRA's relevant phrase—"same" and "substantially"—narrowly circumscribe the scope of the prohibition on issuance of new rules. First, as to "same," in ordinary usage, two things are the "same" only if they are identical in material respects. *Black's Law Dictionary*, for example, defines "same" as "[i]dentical or equal; resembling in every relevant respect." *Black's Law Dictionary* 1607 (11th ed. 2019). The principal definitions in *Webster's Third New International* are no different: "resembling *in every way* : *not different* in relevant essentials at one time"; "conforming *in every respect*"; and "being one without addition, change, or discontinuance : having one nature or

individuality : of like nature or identity : *IDENTICAL*, *SELFSAME*." *Webster's Third New Int'l Dictionary Unabridged* (2017) (emphasis added). Sameness unambiguously refers to the *absence* of differences, not to the *degree* of differences. The statute thus prohibits issuance of a new rule only if it is substantially *identical* to a disapproved rule.

Congress's use of "same," rather than a broader term such as "similar," reflects its choice to limit the scope of the bar on new rules. Substantial *similarity* is a long-established concept in copyright law referring to "a strong *resemblance* between a copyrighted work and an alleged infringement." *Black's*, *supra*, at 1663 (emphasis added); *see*, *e.g.*, *Stromback v. New Line Cinema*, 384 F.3d 283, 297 (6th Cir. 2005). Congress also makes frequent use of the term "substantially similar" when a statute attaches significance to a broad resemblance between two different things. A Westlaw Search of the United States Code reveals 238 currently effective federal statutory provisions that refer to "substantially similar" things. By contrast, the phrase "substantially the same" appears in 174 current statutes, in addition to the CRA provision at issue. In addition, some statutes use *both* terms in the alternative. *See*, *e.g.*, 31 U.S.C. § 1347 (referring to circumstances in which the duties and

powers of an agency are "substantially the same as or similar to" duties and powers of another agency); 12 U.S.C. § 4225(d) (prohibiting informants from collecting duplicate rewards for "providing the same or substantially similar information"). Those provisions underscore that Congress is aware that the words mean different things. *See* A. Scalia & B. Garner, *Reading Law* 176 (2012) ("[C]ourts avoid a reading that renders some words altogether redundant."). Together, these statutes make clear that Congress well knows how to use the term "similar" rather than "the same" when it seeks to attribute legal significance to a *resemblance* as opposed to an *identity* between two things. The CRA's reference to rules that are "substantially the same" thus unambiguously focuses on the *sameness*, or *lack of difference*, of the rules.

Second, as to "substantially," that word qualifies the nature of the prohibited sameness by focusing on absence of non-trivial, material differences as opposed to differences in wording, structure, or form that have no functional effect. "Substantially" means "in a substantial manner" or "so as to be substantial." *Webster's*, *supra*. And "substantial," in turn, means having substance, materiality, reality and importance, or existing to a great extent. The relevant definitions of the term in *Black's*

emphasize this meaning: "[o]f, relating to, or involving substance; material"; "[r]eal and not imaginary; having actual, not fictitious, existence"; "[i]mportant, essential, and material; of real worth and importance"; "considerable in extent, amount, or value; large in volume or number." *Black's*, *supra*, at 1728. *Webster's* similarly defines "substantial" as: "consisting of, relating to, sharing the nature of, or constituting substance : MATERIAL"; "not seeming or imaginary : not illusive : REAL, TRUE"; "being of moment : IMPORTANT, ESSENTIAL"; and "being that specified to a large degree or in the main." *Wesbter's*, *supra*.

Together, then, the words "substantially the same," as applied to rules, mean that the rules are the same in material, non-trivial substantive respects, even if phrased or structured differently. Put another way, the phrase refers to rules whose substance coincides to such a great degree that, for practical purposes, they may be considered the same. And because the "same" means "not different," *Webster's*, *supra*, substantial *differences*—for example, in the scope of the rules, their operative requirements, and their practical effect—necessarily mean that rules are not substantially the *same*. The plain meaning of the

statutory text thus forecloses application of the CRA's bar on issuance of new rules to a new rule that is materially different in substance from a rule that Congress disapproved.

## II. The established legal meaning of "substantially the same" reinforces its narrow scope.

The background against which Congress enacted the CRA confirms the limited scope of its bar on new regulations that are "substantially the same" as regulations disapproved by Congress. In defining the prohibition, Congress used a phrase with a long history in legal usage in cases defining the "doctrine of equivalents" in patent law, under which a device or process may be found to infringe a patent claim even if it does not literally meet an element of the claim, as long as it has elements that are "equivalent" to each element of the patent claim. *See Union Paper-Bag Mach. Co. v. Murphy*, 97 U.S. 120 (1877); *Graver Tank & Mfg. Co. v. Linde Air Prods. Co.*, 339 U.S. 605 (1950); *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17 (1997). The doctrine aims at determining the circumstances in which two things should be treated as being "the same" under the law "even though they differ in name, form, or shape." *Union Paper-Bag*, 97 U.S. at 125. Under the doctrine of equivalents, a device may be found to infringe a patent if an assessment of *what it does*

reveals that it is "substantially the same" as the patented invention—that is, "if it performs substantially the same function in substantially the same way to obtain the same result." *Id*. By contrast, the two are "different" in the eyes of the law "when they perform different functions or in a different way, or produce a substantially different result." *Id.*; *see also Graver*, 339 U.S. at 608; *Warner-Jenkinson*, 520 U.S. at 35.

As the Supreme Court has explained, the "essential predicate of the doctrine … is the notion of identity between a patented invention and its equivalent," in the face of which "there is no basis for treating an infringing equivalent any differently from a device that infringes the express terms of the patent." *Warner-Jenkinson*, 520 U.S. at 35. Material differences, however, between the functions performed by the two devices, the way they perform those functions, or the results they bring about negate the justification for treating them, as a legal matter, as the same. *See Union Paper-Bag*, 97 U.S. at 125. Saying that two devices do substantially the same thing in substantially the same way to achieve substantially the same result is another way of saying that the differences between them are not substantial. *See* AIPLA, *Model Patent Jury Instructions* 15 (2025), https://www.aipla.org/home/news-

publications/model-patent-jury-instructions (equating "substantially the same" and "insubstantially different").

The CRA's adoption of the longstanding terminology treating things as legally equivalent if they are "substantially the same" suggests that, in applying the bar on issuance of new rules, courts should look for a functional *identity* between a disapproved rule and a new rule. Material differences of substance affecting the rules' functioning and effect are incompatible with a finding of identity that justifies treating the new rule as falling within the CRA's prohibition.

## III. The CRA's structure and context support a narrow application of the bar on issuance of rules "substantially the same" as disapproved rules.

The CRA's structure confirms the plain reading of the statutory text: that the limit on agency authority to issue new rules bars only the issuance of rules that are materially the same in substance as a disapproved rule. The CRA provides procedures for enacting, and specifies the effect of, a resolution that states only that an agency rule specified in the resolution is disapproved and has no legal effect. The disapproval sets aside the rule in its entirety, without specifying the specific features of which Congress disapproves. Indeed, different

members of Congress who vote for a resolution may have different views about why the rule is objectionable and what alterations might make it acceptable. All that can be inferred from the resolution itself is that Congress disapproved the rule as a whole—that is, the specific combination of provisions in the rule.

Such legislation would have little effect if an agency could immediately issue a rule that, in substance, did the same thing as a disapproved rule. It is therefore not surprising that the CRA includes a provision barring agencies from effectively negating the disapproval—a law enacted by Congress—by issuing "new" rules that are materially identical to disapproved ones, without further legislative authorization.

At the same time, disapproval of a rule with a particular combination of substantive features does not necessarily imply disapproval of a rule with a different combination of features. For instance, a disapproved rule may have had several parts (as rules often do), only one of which prompted congressional disapproval. Or Congress may have disapproved a rule because its scope was unreasonably broad—or unreasonably narrow. Extending the "substantially the same" bar to cover a new rule that differs in substance from a disapproved rule, but

has some overlap with the disapproved rule, would transform disapproval of one rule into disapproval of a wide range of different rules that were not before Congress—and that it would not have disapproved.

Such a reading of the statute could have the perverse consequence of discouraging members of Congress from voting for legislation to set aside rules of which they strongly disapprove, for fear that seemingly similar but unobjectionable rules could be set aside by a Court. By contrast, reading the statute as written—to require an *identity* in substance between a disapproved rule and a new rule to subject the latter to the CRA's prohibition—avoids the possibility that the statute will condemn rules that Congress would not have voted to disapprove. That reading also avoids an equally unpalatable misstep: that a court, to avoid the consequence of setting aside a rule Congress would not have disapproved, will attempt to discern from Congress's deliberations over a resolution of disapproval what features of the disapproved rule motivated Congress to disapprove it, and will then rest its decisions about whether a new rule is "substantially the same" on whether it corrects the defects that the court surmises Congress saw in the earlier rule. That approach would allow speculation about Congress's purpose to determine the effect

of its legislation, contrary to prevailing approaches to statutory construction. *See Bowe v. United States*, 607 U.S. 13, 40–41 (2026).

When Congress disapproves a rule, it says only that it disapproves *that* rule and any other rule that is substantially the same. Reading the statute otherwise risks both condemning rules of which Congress would not disapprove and leading courts astray interpretively.

## CONCLUSION

This Court should deny the petitions for review.

Respectfully submitted,

/s/Scott L. Nelson
Scott L. Nelson
Allison M. Zieve
Public Citizen Litigation Group
1600 20th Street NW
Washington, DC 20009
(202) 588-1000

*Attorneys for Amicus Curiae Public Citizen*

October 7, 2026

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(a)(7)(C), I certify that the foregoing brief is proportionately spaced, has a type-face of 14 points, and is limited to 12.5 pages. The electronic version of the foregoing brief has been scanned for viruses and is virus-free according to the anti-virus program used (Windows Defender).

/s/ Scott L. Nelson
Scott L. Nelson

## CERTIFICATE OF SERVICE

I hereby certify that this brief has been served through the Court's ECF system on counsel for all parties required to be served on October 7, 2026.

/s/ Scott L. Nelson
Scott L. Nelson