**No. 24-3133**

**IN THE**
**UNITED STATES COURT OF APPEALS**
**FOR THE SIXTH CIRCUIT**

**OHIO TELECOM ASSOCIATION,**

*Petitioners,*

**HAMILTON RELAY, INC.,**

*Intervenor.*

**v.**

**FEDERAL COMMUNICATIONS COMMISSION;**
**UNITED STATES OF AMERICA,**

*Respondents.*

Petition for Review of an Order of the Federal Communications Commission,
Agency No. 23-111

# INTERVENOR'S SUPPLEMENTAL REPLY BRIEF ON REHEARING *EN BANC*


Jennifer Tatel
Daniel H. Kahn
Michael Miller
Wilkinson Barker Knauer, LLP
1800 M St. NW, Ste. 800N
Washington, DC 20036
(202) 783-4141
jtatel@wbklaw.com

*Counsel for Hamilton Relay, Inc.*


October 12, 2026

## TABLE OF CONTENTS

TABLE OF AUTHORITIES .......... iii
INTRODUCTION .......... 1
ARGUMENT .......... 2
CONCLUSION .......... 7

## TABLE OF AUTHORITIES

### Cases

*SEC v. Chenery Corp.*, 318 U.S. 80 (1943) .......... 7

*United States v. Shafer*, 573 F.3d 267 (6th Cir. 2009) .......... 1, 2

### Statutes

5 U.S.C. § 551 .......... 6

5 U.S.C. § 801 .......... 6

5 U.S.C. § 804 .......... 6

47 U.S.C. § 201 .......... 1, 2, 3, 4, 5

47 U.S.C. § 222 .......... 3, 4

47 U.S.C. § 225 .......... 1, 3, 4, 7

47 U.S.C. § 251 .......... 3, 5

### Rules

47 C.F.R. § 64.2011 .......... 6

47 C.F.R. § 64.5111 .......... 6

### Other Authorities

*Data Breach Reporting Requirements*, Report and Order, 38 FCC Rcd 12523 (2023) .......... 1, 3, 4, 5, 6, 7

## INTRODUCTION

As Hamilton Rely, Inc. ("Hamilton") explained in its supplemental brief, the combination of Sections 201 and 225 of the Communications Act of 1934, as amended (the "Act"), do not justify the application of Federal Communications Commission ("FCC") data breach requirements to telecommunications relay service ("TRS") providers. The FCC has not persuasively rebutted Hamilton's arguments that Section 201(b) does not authorize data privacy regulation and that Section 225's limited permission for the FCC to regulate TRS to achieve equivalent *communication* does not justify equivalent *regulation* or the application of common carrier-style requirements.

In this reply brief, Hamilton focuses on two targeted issues.

First, Hamilton explains why its arguments regarding Section 201(b) are properly presented for the *en banc* Court's consideration under *United States v. Shafer*, 573 F.3d 267 (6th Cir. 2009). As Hamilton explained, it did not address Section 201(b) at the panel stage because the FCC did not claim that provision as authority to apply its rules to TRS providers. The FCC now says otherwise. But its sole support is an umbrella or roadmap paragraph in its Order that lists, without any analysis, purported sources of authority it selectively claimed over distinct classes of regulated entities. *See Data Breach Reporting Requirements*, Report and Order, 38 FCC Rcd 12523, 12580 ¶ 117 (2023) ("Order"); Petitioners' Appendix ("A") 58.

As explained below, the Order's detailed discussion makes clear that the FCC relied on Section 201 for some other entities but not TRS providers. Accordingly, Hamilton has properly presented its arguments regarding Section 201.

Second, Hamilton briefly addresses the relationship between the Congressional Review Act ("CRA") and the Order's regulation of TRS. The FCC now claims that the entire Order should survive the CRA because of its new TRS regulations. But this is the same sort of end-run that Petitioners persuasively have argued that the CRA does not permit, and the opposite is true: if this Court holds that the carrier-specific provisions of the Order must fall because of the CRA, then it must strike down the Order's TRS requirements.

## ARGUMENT

***Section 201(b).*** The FCC tacitly admits that, in proper circumstances, this Court considers arguments on rehearing that were not originally raised with the panel. *See* Respondents' Supp. Br. 17 (not arguing that this Court may never consider argument raised on rehearing). The point of contention between Hamilton and the FCC is whether this case presents such circumstances. It does. The FCC's one-line argument to the contrary asks this Court to ignore the Order's text, structure, and context and should therefore be rejected.

Under *Shafer*, this Court considers arguments presented at the rehearing stage where: (1) the argument goes "to the heart of [the Court's] initial holding"; and

(2) the party did not "willful[ly]" hold back from making the argument earlier. 573 F.3d at 276–77; *see also* Intervenor Supp. Br. 20. The FCC does not contest the first factor. *See* Respondents' Supp. Br. 17. The core issue, then, is whether Hamilton willfully held back from arguing the issue.

Hamilton did not do so because it "had no reason to address" whether Section 201(b), in conjunction with Section 225's functionally equivalent communication requirement, authorizes the regulation of TRS providers where the "FCC never relied on Section 201(b) in imposing requirements on TRS providers." Intervenor Supp. Br. 20.

The FCC cites Paragraph 117 in the Order as the only support for its argument to the contrary. *See* Respondents' Supp. Br. 17. That paragraph provides in relevant part: "We find that sections 201(b), 222, 225, and 251(e) provide us with authority to adopt the breach notification rules enumerated in this Order. We conclude further that we have authority to apply these revised rules to interconnected [Voice over Internet Protocol (VoIP)] providers." A58 (Order ¶ 117). The FCC claims, based on Paragraph 117, that it "invoked both Sections 201(b) and 222 as bases for the challenged rules," Respondents' Supp. Br. 17 (citing A58 (Order ¶ 117)). But this misses the point. The question is not whether the FCC relied on Section 201(b) in any portion of the Order. Of course it did. The question is whether it relied on Section 201(b) in extending its rules to TRS providers. The answer here is plainly no.

In the very first sentence of Paragraph 130, which is itself the first paragraph to discuss the FCC's legal authority over TRS providers, the Order states that the FCC has "*separate and independent* authority under sections 225 and 222 to amend our data breach rule for TRS to ensure that TRS users receive privacy protections equivalent to those enjoyed by users of telecommunications and VoIP services." A65 (Order ¶ 130) (emphases added). The TRS-specific paragraphs then discuss Sections 222 and 225 as authority to regulate TRS providers, but they do not mention Section 201(b) even once. This makes abundantly clear that the FCC understood itself to be relying exclusively on Sections 222 and 225 with respect to TRS providers.[1]

The Order's structure plainly shows that Paragraph 117 is merely a shorthanded preview that lists authorities the Order ultimately selectively asserts over distinct classes of entities. First, Paragraph 117 is a stand-alone paragraph following the subsection header entitled, "Legal Authority." *See* A58 (Order ¶ 117). Then, after Paragraph 117, the Order introduces five additional sub-subsections, entitled, "Section 222," "Section 201(b)," "Interconnected VoIP," "Legal Authority

[1] The FCC also claims that the last sentence of paragraph 130 "explain[s]" that the requirements the *Order* imposes on carriers via Section 201 "carry over to relay service providers by operation of Section 225." Respondents' Supp. Br. 17-18 (citing A66 (Order ¶ 130)). This is incorrect twice over. First, that sentence simply recaps a decision the FCC made in 2013. *See* A66 (Order ¶ 130) ("The Commission concluded further that . . . ."). Second, as noted, paragraph 130 expressly references the FCC's "authority under sections 225 and 222" and does not mention Section 201 once. A65-66 (Order ¶ 130).

to Adopt Rules for TRS," and "Impact of the Congressional Disapproval of the 2016 Privacy Order," respectively. A58–66 (Order ¶¶ 118–33). Any reasonable reader would understand from this structure that the Order addresses TRS distinctly from other regulated entities.

Context reinforces this reading. In contrast to the TRS discussion, the Order expressly relies on Section 201(b) repeatedly for authority to regulate data breaches for telecommunications carriers. *See* A61–64 (Order ¶¶ 124–26). In addition, while the umbrella preview in Paragraph 117 mentions Section 251(e), the text that follows relies on Section 251(e) for authority to promulgate requirements for VoIP providers, but not any other entities. A65 (Order ¶ 129).

In sum, the FCC carefully delineated which authority it was relying on with respect to which class of entity, and it did not rely on Section 201(b) with respect to TRS providers. A brief, high-level roadmap does not undercut that careful delineation, and the agency cannot retroactively attempt to change its justification to suit a litigation tactic.

Because the Order makes clear that the FCC did not rely on Section 201(b) in promulgating requirements for TRS providers, Hamilton had no reason to address that basis of authority at the panel phase. It was only after the panel majority invoked Section 201(b) as the heart of its holding concerning TRS providers that Hamilton

was obliged to address the issue. Under *Schafer*, the Court may therefore consider Hamilton's arguments.

***CRA.*** The FCC now urges that expanding the breadth of regulation to include TRS providers was not an "insubstantial change." Respondents' Supp. Br. 24. But as Petitioners explain, "[a]n agency cannot evade the CRA by reimposing a disapproved rule on a broader scale." Petitioners' Supp. Br. 13; *see also* Petitioners' Reply Br. 24–25 (noting agency cannot evade CRA bar by adding a hypothetical additional rule). The CRA's reissuance bar applies to each disapproved "rule," which includes "*a part* of an agency statement." 5 U.S.C. §§ 551(4) (emphasis added), 804(3). The 2016 carrier requirements were one such discrete rule, as the FCC itself now concedes by agreeing that they—not the entire 2016 Order—are the relevant comparator. Respondents' Supp. Br. 18. The FCC likewise codified the carrier and TRS requirements separately. *Compare* 47 C.F.R. § 64.2011, *with id.* § 64.5111. Thus, adding a new rule for TRS providers cannot change whether the carrier rule violates the CRA, which provides that a disapproved rule "may not be reissued in substantially the same form." 5 U.S.C. § 801(b)(2).

If the carrier rule falls, the TRS extension must also fall with it. The TRS rule's expansion from customer propriety network information to personally identifiable information ("PII") borrows the carrier rule's definition of PII. *See* 47 C.F.R. § 64.5111(e)(2)(ii) (incorporating 47 C.F.R. § 64.2011(e)(5)); A40 (Order

¶ 70). In addition, the FCC justified the TRS amendments as necessary to preserve parity with the carrier regime—to "maintain functional equivalency" and ensure that TRS users receive privacy protections "equivalent to those enjoyed by users of telecommunications and VoIP services." A39 (Order ¶¶ 65–66), A65–66 (¶¶ 130–32); *see also* 47 U.S.C. § 225(a)(3) (only authorizing the FCC to seek "functionally equivalent" communication). Once the carrier amendments are set aside, leaving their TRS counterparts in place would defeat that stated design. This Court cannot sustain the resulting stand-alone TRS regime on a rationale different from the one the FCC adopted. *See SEC v. Chenery Corp.*, 318 U.S. 80, 95 (1943).

## CONCLUSION

This Court should vacate the FCC's Order.

Dated: October 12, 2026

Respectfully submitted,

*/s/ Jennifer Tatel*

Jennifer Tatel
Daniel H. Kahn
Michael Miller
Wilkinson Barker Knauer, LLP
1800 M St. NW, Ste. 800N
Washington, DC 20036
(202) 783-4141
jtatel@wbklaw.com

*Counsel for Hamilton Relay, Inc.*

## CERTIFICATE OF COMPLIANCE

I certify that the foregoing supplemental reply brief complies with the page limitation in this Court's July 31, 2026 briefing letter (Dkt. 110) because it does not exceed 12 pages. I further certify that the brief complies with the typeface and type-style requirements of Federal Rules of Appellate Procedure 32(a)(5) and (6) because it has been prepared in 14-point Times New Roman font.

*/s/ Jennifer Tatel*
Jennifer Tatel

## CERTIFICATE OF SERVICE

I hereby certify that, on October 12, 2026, the foregoing document was filed with the Clerk of the Court for the United States Court of Appeals for the Sixth Circuit using the appellate CM/ECF system. I further certify that all participants in the case are registered CM/ECF users and that service will be accomplished through the CM/ECF system.

*/s/ Jennifer Tatel*
Jennifer Tatel